**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Albert STEVENS, Defendant–Appellant.**

No. 93–1549.

United States Court of Appeals,
Sixth Circuit.

Submitted Jan. 27, 1994.

Decided May 31, 1994.

Rehearing Denied Aug. 4, 1994.

Patricia G. Blake, Office of the U.S. Atty., Detroit, MI (briefed), for plaintiff-appellee.

Rodney J. O'Farrell, Saginaw, MI (briefed), for defendant-appellant.

Before: KENNEDY, JONES, and SUHRHEINRICH, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Albert Stevens was convicted of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and of possessing a firearm during a drug offense in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Stevens to 211 months (17½ years) in prison. We vacate the sentence and remand for resentencing, as the district court wrongly sentenced Stevens based upon the number of marijuana plants his supplier grew, rather than upon the weight of the marijuana that they conspired to possess.

## I

Employing an undercover officer and a confidential informant, a narcotics enforcement team made nine controlled purchases of

marijuana from the defendant between November 1991 and June 1992. These purchases ranged in size from an eighth of an ounce to two pounds. At the time of these purchases, the agents report seeing additional marijuana in Stevens' possession and hearing from him about amounts he was soon to have delivered. The agents also made similar purchases from other persons who purportedly received marijuana from Stevens.

In September 1992, agents executed search warrants at Stevens' home in Saginaw, Michigan, and at a cabin he owned in nearby Harrison. At the home, the agents seized 0.2 grams of marijuana, two notebooks containing such things as names and dollar amounts, a triple beam scale, a small amount of ammunition, and safe. At the cabin, the agents seized 756.88 grams of marijuana, two firearms, and a thermos with marijuana residue.

Stevens appeared before a grand jury for indictment. In that proceeding, a man named Michael Volz testified that he began providing marijuana to Stevens in 1988. Through an intermediary that year, he provided Stevens with about five pounds of marijuana from 50 plants. He then met Stevens for the first time in 1989, and Stevens indicated he would take whatever Volz grew that year. Volz supplied Stevens with approximately 10 pounds from 100 plants. Volz's testimony is unclear as to how much marijuana he supplied Stevens with in 1990. In 1991, he grew between 700 and 1000 plants resulting in 20 to 30 pounds of marijuana. Before planting in 1992, Stevens told Volz he wanted 100 pounds of marijuana, and Volz said he grew about 1000 plants that year, though not all were harvested, as police broke up the conspiracy. Volz, who was granted partial immunity and not indicted, died shortly after giving his testimony, so the evidence from him appeared at sentencing only on a transcript where he was not cross-examined.

After indictment, Stevens entered into a plea agreement in which he admitted participating in a marijuana conspiracy and carrying a firearm in relation to a drug trafficking crime. The government agreed that the length of incarceration would not exceed the mid-point of the sentencing guideline range that the court found applicable.

At sentencing, the court determined Stevens' base offense level using the drug quantity table in § 2D1.1 of the Guidelines. In determining the level, the judge did not rely upon any of the amounts of drugs purchased, viewed, or learned about by the agents. Stevens had contested some of these amounts. Rather, the court relied upon Volz's testimony to the grand jury. The court first found his testimony to be credible and then found that there was enough evidence to find Stevens liable for the total amount of marijuana Volz grew, as the marijuana was "relevant conduct" that was reasonably foreseeable to Stevens as per § 1B1.1 of the Guidelines. Then, in determining how much marijuana to attribute to Stevens, the court added up the number of plants Volz grew, ignoring 1990 in which the court found Volz's testimony unclear. Each plant was assumed to weigh one kilogram. The court stated that Volz grew 50 plants in 1988, 100 in 1989, and, based upon the lowest estimates from 1991 and 1992, 700 and 750 plants in those years respectively. J.A. at 157–58. Thus:

> [T]here alone we have 1600 plants over the course of this conspiratorial relationship, far beyond the 1000 kilograms attributed by weight minimum, that qualifies for a level 32 calculation.

*Id.* at 158. The court then emphasized that these plants showed that the relevant conduct was in the 1000 to 3000 kilogram range of level 32.

## II

The drug quantity table in § 2D1.1(c) of the United States Sentencing Commission *Guidelines Manual* is used to determine the base offense level for defendants guilty of drug crimes. At each level of the table is a corresponding weight range for marijuana. For a defendant apprehended with a particular weight of marijuana leaves, determining the base offense level can be as easy as finding the level with which that weight corresponds.

■ When a person is apprehended with marijuana *plants*, however, the appropriate

weight of the marijuana cannot be determined simply by weighing the plants, for Congress has criminalized possession of only consumable portions of the plant and thereby excepted the mature stalk. *See* 21 U.S.C. § 802(16). Following the drug quantity table is a provision that explains how to treat marijuana plants for sentencing purposes, which we will refer to as the "equivalency provision." That provision states:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

§ 2D1.1(c) n.*.

When the equivalency provision is applied to 50 or more plants, it metes out a punishment that is usually much greater than that given for the consumable marijuana those plants produce. As the Guidelines state, the "average yield from a mature marihuana plant equals 100 grams of marihuana." § 2D1.1, comment. (backg'd). Because of the equivalency provision, then, a person caught with 100 marijuana plants is sentenced as if he had been found with 100 kilograms of marijuana, even though the plants would probably produce only about 10 consumable kilograms of the drug.

■ According to the Second and Eleventh Circuits, the stepped-up punishment in the equivalency provision applies only to *live* plants that are found. For marijuana that has been harvested, the guidelines provide punishment based upon the actual weight of the controlled substance. In *United States v. Zimmer,* 14 F.3d 286, 290 n. 3 (1994), we left open the question of whether we agree on this point, and we now join these circuits in making this distinction between live and harvested marijuana.

The Second Circuit, in *United States v. Blume,* 967 F.2d 45 (2nd Cir.1992), remanded a marijuana conspiracy case for resentencing where the judge had wrongly applied the equivalency provision to plants that a defendant grew in the past. In *Blume,* the sentencing judge arrived at an amount for sentencing by beginning with the number of marijuana plants seized during police searches, estimating the number of plants the conspirators had grown previously, and applying the equivalency provision to treat all those plants as weighing one kilogram of marijuana each. The court remanded for resentencing, stating:

> that the intent of the guidelines was to measure live marijuana by the number of plants and dry leaf marijuana by weight. We believe this approach best comports with congressional intent in passing its mandatory sentencing provision, 21 U.S.C. § 841(b)(1)(B)(vii), and with the rationale for the corresponding sentencing guideline, U.S.S.G. § 2D1.1.

*Id.* at 49 (citations and quotations omitted).

In *United States v. Osburn,* 955 F.2d 1500 (11th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992), the Eleventh Circuit made the same point. The *Osburn* defendants claimed that the marijuana sentencing scheme violated due process by favoring "growers who have just completed their harvest over growers who have not yet harvested their marijuana plants." *Id.* at 1509. The court agreed that Congress has chosen to create harsher sentencing for persons caught with live plants. "Under section 841(b), a grower who is arrested immediately after she has harvested her marijuana crop will be sentenced according to the weight of the marijuana yielded by that crop.... Yet, a similarly situated grower, arrested immediately prior to harvesting his crop, will be sentenced on a 1000–gram–per–plant basis." *Id. Osburn,* which held that this congressional decision does not violate due process rights, therefore shows the Eleventh Circuit to be in accord with the Second Circuit in applying the equivalency provision only to live plants.[1]

---

1. The Ninth Circuit, as well, subscribed to the same proposition in a decision that was withdrawn for other reasons. *See United States v. DeLeon,* 955 F.2d 1346, 1350 (9th Cir.1992) ("Congress intended live marijuana plants to be measured by number and processed marijuana by weight."), *op. withdrawn, subs. op.* 979 F.2d 761 (9th Cir.1992).

Only the Seventh Circuit has held that the enhanced punishment of the equivalency provision is to be applied to harvested plants. In *United States v. Haynes,* 969 F.2d 569, 570 (7th Cir.1992), the court acknowledged that the equivalency provision is "typically" applied to live plants but then extended its reach to apply to processed marijuana when it is known how many plants were used to make the marijuana. The *Haynes* court relies solely on the text of the equivalency provision, which led the court to believe the enhanced punishment applies to any offense "involving" 50 or more marijuana plants, as nothing in the text states that it is limited to attributing weight to live plants. Though this may be a rational reading of the provision in isolation, the provision's context shows it is meant to refer to live plants only, not plants that were involved in making processed marijuana.

When the Guidelines were first promulgated in 1987, each base offense level of the drug quantity table listed both a range of marijuana plants and a separate range for kilograms of marijuana. The ranges were such that a person caught with a given number of marijuana plants usually would be placed at the same level as he would if his plants yielded the average amount, i.e., 100 grams of marijuana each. Courts had little problem understanding when they were to apply the "plant" range and when they were to apply the "weight" range to a particular case: "[u]nder the Guidelines, when live marijuana plants are found, their quantity is appropriate for determining base offense level. When the marijuana leaves have been dried, their weight should be used." *United States v. Corley,* 909 F.2d 359, 361 (9th Cir. 1990) (rejecting defendant's argument that under the 1987 Guidelines the court should consider the usable marijuana from his 800 live "seedlings" instead of counting them as 800 plants).

On the other hand, courts did have a problem deciding whether to weigh plants or consumable marijuana when applying the statutory requirements concerning mandatory minimum marijuana sentences. The mandatory sentences that Congress had established for marijuana in 21 U.S.C. § 841(b)

originally were given only in terms of the marijuana's weight. Because possession of marijuana stalks was not criminalized, defendants and the government disputed whether entire marijuana plants were to be weighed for the purpose of computing whether a mandatory minimum sentence applies. *See United States v. Miller,* 680 F.Supp. 1189, 1191 (E.D.Tenn.1988) (holding that Congress did not intend for stalk weight to apply when calculating marijuana amount for purposes of mandatory minimum sentence).

In § 6479 of the Anti–Drug Abuse Act of 1988, Congress "intended to curtail this unnecessary debate." 134 Cong. Rec. S17360, 17368 (daily ed. Nov. 10, 1988) (analysis of legislation prepared by its drafter) (citing *Miller*). The legislation amended the United States Code such that the mandatory minimum of ten years applied to persons with 1000 kilograms of marijuana or 1000 plants, *see* 21 U.S.C. § 841(b)(1)(A)(vii), and the five year mandatory minimum applied to persons responsible for 100 or more kilograms or 100 plants. *See* 21 U.S.C. § 841(b)(1)(B)(vii). Also, the legislation amended § 841(b)(1)(D), which allows a *maximum* five-year sentence for persons with less than 50 kilograms of marijuana or less than 50 plants.

In the wake of these amendments, the United States Sentencing Commission revamped the drug quantity table, effective November 1, 1989. The new drug quantity table lists only amounts of marijuana (not plants) in its body and contains the equivalency provision instead. The equivalency provision, which uses 50 plants as the level where the stepped-up punishment begins, reflects the Commission's attempt to have the guideline sentence calculations yield the maximum and minimum sentences that Congress enacted through § 6479. *See* U.S.S.G.App. C at 57–58 (explaining that the 1989 drug quantity table amendments were made to reflect § 6479). The important point emerging from this history is that under the initial editions of the Guidelines, harvested marijuana was to be measured by weight, not by the number of plants that the marijuana came from, and neither Congress nor the Sentencing Commission has ever repudiated this propo-

sition. The equivalency provision was developed to apply in sentencing when the plants have not been harvested. The proper way to calculate the quantity of marijuana for sentencing here, then, is to apply the provision only to live marijuana plants found. Additional amounts for dry leaf marijuana that a defendant possesses—or marijuana sales that constitute "relevant conduct" that has occurred in the past—are to be added based upon the actual weight of the marijuana and not based upon the number of plants from which the marijuana was derived.

■ Thus, in summary, if a person sold a quantity of marijuana in Year 1 and is apprehended while growing 50 marijuana plants in Year 2, a sentencing judge must calculate the base offense level by adding the 50 kilogram stepped-up punishment to the actual weight of the marijuana sold, as determined by a preponderance of the evidence. Likewise, if the person is caught with less than 50 plants in Year 2, the 100–gram–per–plant equivalency is used for sentencing purposes. In either case, a sentencing judge is not to levy the sentence by calculating the number of plants "involved" in producing the earlier marijuana. A judicial error in this regard can make a significant difference in sentencing. *See, e.g., United States v. Blume,* 967 F.2d 45, 50 (2nd Cir.1992) (11,100 kilograms versus 4000 kilograms).

■ Thus, Stevens should have been sentenced at a level equivalent to the total weight of marijuana he conspired to sell, as determined by the sentencing judge by a preponderance of the evidence. The enhanced punishment of one kilogram per plant should not have been applied.[2] Thus, Volz's testimony for the years 1988 through 1991 may be used to establish, by a preponderance of the evidence, a weight of marijuana that Stevens sold, but may not be used to produce a number of plants that is subject to the

enhanced punishment of the equivalency provision. Furthermore, if Volz's testimony is relied upon, it must be used in such a way as to avoid double counting. The presentence report in this case calculates a total amount of marijuana of 2,472.73 kilograms by adding together one kilogram for each plant Volz grew over a five-year period along with all of the marijuana that the defendant sold or with which he was observed. It is thus likely that the report counts some marijuana twice, both as a plant and as dry marijuana after harvesting.

### III

We VACATE the sentence imposed and REMAND for resentencing in accordance with this opinion.

**2.** In arguing that the one-kilogram-per-plant enhancement must apply to Stevens, the government cites *United States v. Holmes,* 961 F.2d 599 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992). *Holmes,* however, held only that the equivalency provision's punishment does not violate due process, not that it is to be applied to anything other than live plants seized.

Also, it is unclear from the presentence report exactly how many live plants were seized. When officials ended the conspiracy, they pulled 275 plants from Volz's fields. A month later, they "eradicated 419 plants ... based on information provided by Volz." J.A. at 12. It is unclear whether these 419 plants were Volz's and were part of the conspiracy with Stevens.