PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 5/29/96**

TENTH CIRCUIT

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 95-3089 |
| | ) | |
| PAUL SILVERS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 91-CR-40045-02)**
_____

Robert S. Streepy (Randall K. Rathbun, United States Attorney, and Gregory G. Hough, Assistant United States Attorney, Topeka, Kansas, with him on the brief), Assistant United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

Thomas M. Dawson, Leavenworth, Kansas, for Defendant-Appellant.
_____

Before **BRORBY, BARRETT** and **MURPHY**, Circuit Judges.
_____

**BRORBY**, Circuit Judge.
_____

Defendant Paul Silvers pled guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a). He now appeals his sentence. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and affirm.

# I

A grand jury returned a two-count indictment against Mr. Silvers and four other individuals in September 1991. The district court later dismissed Count 1 of the indictment, alleging Mr. Silvers and his codefendants conspired to possess marijuana with intent to distribute (21 U.S.C. §§ 841(a) & 846), on double jeopardy grounds, *United States v. Mintz*, 804 F. Supp. 229 (D. Kan. 1992), and we affirmed the dismissal. *United States v. Mintz*, 16 F.3d 1101 (10th Cir.), *cert. denied*, 114 S. Ct. 2723 & 2760 (1994). After we issued our mandate, Mr. Silvers pled guilty to Count 2 of the indictment, which alleged he and his codefendants "knowingly and intentionally possess[ed] with the intent to distribute or dispense more than 1000 marijuana plants ... in violation of Title 21, United States Code, Section 841(a)(1); with reference to Title 21, United States Code, Sections 812 and 841(b)(1)(A)." In the plea agreement, the government agreed to allow Mr. Silvers "to present evidence at his sentencing regarding the number of marijuana plants that he possessed with intent to distribute," and Mr. Silvers "acknowledge[d] and underst[ood] that the Government takes the position that defendant possessed, with the intent to distribute, over 1000 marijuana plants, and will advocate this position at his sentencing." In the section of the preprinted petition to enter a plea of guilty in which the defendant is to indicate whether the government has made any promises or concessions, Mr. Silvers wrote, "possessed amount of marijuana is left open until sentencing." Similarly, in the section in which the defendant is to state the terms of his plea agreement, Mr. Silvers wrote, "plea to possession & will be allowed to argue about amount of marijuana in defendant's possession." Finally, defense counsel averred that he had informed Mr. Silvers that the guilty plea "left open marijuana amount for trial."

At the change of plea hearing, defense counsel stated he

> just want[ed] to make sure the Court knew and that my client also knows, the issue of the amount of the marijuana in his possession is left open specifically for sentencing, and the government contends he had a thousand plants and he contends he had substantially less than that, and that issue is reserved, to my understanding, to the sentencing.

The government conceded defense counsel was correct, and that the matter was "spelled out in the written plea agreement." Later during the change of plea hearing, the government outlined the penalties for the offense to which Mr. Silvers was pleading guilty and explained the penalties would differ depending on the amount of marijuana attributable to him. The district court also stated the sentence would depend on "the finding of the court as to the quantity of marijuana." The government then summarized the evidence against Mr. Silvers, which, according to the government, included evidence sufficient to prove beyond a reasonable doubt that Mr. Silvers possessed with intent to distribute "a thousand or more marijuana plants." The district court asked defense counsel whether he believed the evidence was sufficient to prove Mr. Silvers' guilt beyond a reasonable doubt, "keeping in mind the difference of opinion on the quantity of marijuana." Defense counsel responded, "[y]es, reserving the fact of the amount of possession of Mr. Silvers." After an interruption, defense counsel continued:

> Reserving the amount of pounds, which we believe to be somewhere between 150 and potentially 400 pounds, we would agree with the government's assertions that there was possession of marijuana here, and the other issue is the amount of marijuana that was destroyed while in the possession of the government.

At the close of the hearing, the district court accepted Mr. Silvers' guilty plea.

Mr. Silvers' presentence report attributed 1,000 marijuana plants to him for sentencing

purposes, thereby triggering the mandatory minimum sentence prescribed in 21 U.S.C. § 841(b)(1)(A)(vii), which includes imprisonment for not less that ten years nor more than life. Using the version of the guidelines in effect at the time of sentencing, *see* U.S.S.G. §1B1.11(a); *United States v. Owens*, 70 F.3d 1118, 1130 (10th Cir. 1995), the presentence report assigned Mr. Silvers a base offense level of 32, the level for offenses involving "[a]t least 1,000 KG but less than 3,000 KG of Marihuana." U.S.S.G. § 2D1.1(c)(4). In converting the 1,000 marijuana plants into 1,000 kilograms of marijuana, the presentence report relied on a footnote to the Drug Quantity Table, U.S.S.G. § 2D1.1(c), which provides:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marijuana is greater, use the actual weight of the marihuana.

(Emphasis in the original). With a three-point downward adjustment for acceptance of responsibility, U.S.S.G. §3E1.1(a, b), Mr. Silvers' total offense level was 29, yielding a sentencing range of 97-121 months in criminal history category II. U.S.S.G. Chapter 5, Part A. However, because of the ten-year statutory mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(A)(vii), Mr. Silvers' effective guideline sentencing range was 120-121 months. U.S.S.G. §5G1.1(c)(2).

Now represented by a different attorney, Mr. Silvers objected to the presentence report on the ground that "use of any quantity of plants in this case to establish the Guideline would be legally incorrect, [because] the equivalency provisions of the United States Sentencing Guidelines with respect to marijuana can only apply to live marijuana plants actually found." Mr. Silvers also contended "there is no evidence to support 1,000 plants." At the sentencing hearing, the district

court rejected Mr. Silvers' first contention, stating "you've made an amenable argument ... to convert this sentencing into a proceeding on pounds rather than on number of plants of marijuana. However, the Court is of the opinion that ... [Mr. Silvers] should be sentenced on the basis of plants." As for the second objection, the district court found that "the presentence investigation report correctly uses 1,000 or more marijuana plants to calculate the defendant's guideline range." At the close of the hearing, the district court sentenced Mr. Silvers to 120 months imprisonment, the statutory mandatory minimum in light of the finding at least 1,000 marijuana plants were attributable to him for sentencing purposes. 21 U.S.C. § 841(b)(1)(A)(vii). This appeal followed.

## II

Before we address Mr. Silvers' challenge to his sentence, we will attempt to eliminate the apparent confusion surrounding the nature of his guilty plea. As noted above, Mr. Silvers pled guilty to Count 2 of the indictment, which alleged he and his codefendants "knowingly and intentionally possess[ed] with the intent to distribute or dispense more than 1000 marijuana plants ... in violation of Title 21, United States Code, Section 841(a)(1); with reference to Title 21, United States Code, Sections 812 and 841(b)(1)(A)." The only substantive charge in Count 2 was that Mr. Silvers possessed marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a). The other statutes cited are not substantive offenses: 21 U.S.C. § 812 is the schedule of controlled substances, and 21 U.S.C. § 841(b)(1)(A) prescribes certain mandatory minimum penalties for violations of 21 U.S.C. § 841(a). Our cases make clear not only that the mandatory minima prescribed in 21 U.S.C. § 841(b)(1)(A) are not substantive offenses in themselves, but further that "[t]he quantity of the marijuana possessed by [the] defendant is not an element of the substantive offense as defined in 21

-5-

U.S.C. § 841(a)." *United States v. Cox*, 934 F.2d 1114, 1121 (10th Cir. 1991); *see also United States v. Underwood*, 982 F.2d 426, 429-30 (10th Cir. 1992) (because drug quantity is not an element of 21 U.S.C. § 841(a), defendant is not entitled to have the issue decided by a jury), *cert. denied*, 113 S. Ct. 3043 (1993). We have also held it is unnecessary for the government to allege drug quantity in the indictment, and that even when the government does so, the quantity alleged "does not dictate the mandatory minimum that the court is required to impose" under 21 U.S.C. § 841(b). *United States v. Reyes*, 40 F.3d 1148, 1151 (10th Cir. 1994); *see also Underwood*, 982 F.2d at 429 (district court may rely on drug quantities not alleged in the indictment in calculating base offense level under U.S.S.G. § 2D1.1(c)). Because drug quantity is not an element of the offense, "the government [is] not bound to prove the quantity [of drugs] seized beyond a reasonable doubt," *Cox*, 934 F.2d at 1121, in order to obtain a conviction under 21 U.S.C. § 841(a); rather, the government is required only to prove the quantity of drugs attributable to the defendant by a preponderance of the evidence at sentencing in order to trigger the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b), *Underwood*, 982 F.2d at 429, just as the government is required to prove such quantities by a preponderance of the evidence to establish the defendant's base offense level under the Drug Quantity Table, U.S.S.G. §2D1.1(c), *United States v. Williamson*, 53 F.3d 1500, 1529 (10th Cir.), *cert. denied*, 116 S. Ct. 218 (1995), and the evidence need only possess "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. §6A1.3, comment.; *see United States v. Edwards*, 69 F.3d 419, 438 (10th Cir. 1995), *petitions for cert. filed*, (U.S. Feb. 23, Feb. 29 & Mar. 4, 1996) (Nos. 95-1355, 95-8147 & 95-8134); *United States v. Cody*, 7 F.3d 1523, 1527 (10th Cir. 1993). Placed in this context, Mr. Silvers' guilty plea amounted to an unconditional plea to the charge he possessed marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a), with

an express caveat that he did not wish to stipulate to the amount of marijuana attributable to him for sentencing purposes. With that said, we turn to Mr. Silvers' contentions on appeal.

### III. *Mandatory Minimum Penalties under 21 U.S.C. § 841(b)(1)(A)*

A. *Supposed Requirement that the Government Prove Mr. Silvers Grew Marijuana*

Mr. Silvers contends the district court erred when it calculated his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(vii) on the basis of the number of marijuana plants attributable to him, rather than the actual weight of that marijuana. According to Mr. Silvers, the one plant/one kilogram equivalency does not apply in his case because he did not actually "grow" the marijuana in question, but instead discovered it growing wild in Kansas. In effect, Mr. Silvers would have us hold that, in order to obtain a sentence based on the number of plants, the government must prove by a preponderance of the evidence that the defendant was a "grower" of marijuana. Mr. Silvers' contention stands or falls on how we construe the relevant statute, 21 U.S.C. § 841(b)(1)(A)(vii).

"In determining the scope of a statute, we look first to its language." *United States v. Turkette*, 452 U.S. 576, 580 (1981). The statute itself says nothing about a requirement that the government prove by a preponderance that the defendant was a grower of marijuana. Instead, the statute provides as follows:

(b) **Penalties**

Except as otherwise provided .., any person who violates [21 U.S.C. § 841(a)] shall be sentenced as follows:

-7-

(1)(A)  In the case of a violation of [21 U.S.C. § 841(a)] involving--

....

(vii)  1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight; ...

....

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

21 U.S.C. 841(b).  By its plain and unambiguous language, the statute requires the government to prove only that *either* 1,000 marijuana plants *or* 1,000 kilograms of marijuana are attributable to the defendant for sentencing purposes in order to trigger the mandatory minimum.  To accept Mr. Silvers' construction, we would in effect be required to rewrite the statute to read "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or, *if and only if the defendant is a grower of marijuana*, 1,000 or more plants regardless of weight."  For the reasons stated below, we cannot and will not do so.

When, as in this case, "the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Floyd*, ___ F.3d ___, ___ (10th Cir. Apr. 18, 1996), 1996 WL 189800, *4 (quoting *Turkette*, 452 U.S. at 580 (citations and internal quotation marks omitted)).  There is no "clearly expressed legislative intention to the contrary" in this case. Before 1986, possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a) was not punished based on the number of plants attributable to the defendant.  Congress did so for the first time with the enactment of the

-8-

Anti-Drug Abuse Act of 1986, Pub. L. 99-570, § 1003(a)(1)(C), 100 Stat. 3207-5. No House or Senate Report was submitted with this legislation, *see* 1986 U.S.C.C.A.N. 5393, and the discussion of the statute reported in the Congressional Record sheds no light on Congress' intent. Congress enacted the amendments changing the relevant sections of 21 U.S.C. § 841(b) into their present form as part of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, §§ 6470(g)(2), 6470(h)(2), & 6479, 102 Stat. 4181, 4378, 4381-82. Again, no House or Senate Report was submitted with this legislation. *See* 1988 U.S.C.C.A.N. 5937. The only discussion of the relevant parts of the statute on the either the House or Senate floor was a section-by-section analysis read into the Congressional Record by Senator Biden, then chairman of the Senate Judiciary Committee. Regarding § 6479, Senator Biden stated:

> Section 841(b)(1)(A) provides for a mandatory minimum 10 year penalty for distribution, or possession with intent to distribute, of "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Defendants charged with possessing large quantities of marijuana plants have argued that the statutory definition of marijuana specifically excludes the seeds and stems of the plant, and that therefore these items may not be counted toward the 1,000 kilogram requirement.

> The government has argued in response that the term "mixture or substance" encompasses all parts of the plants as harvested, notwithstanding the statutory definition of "marijuana," but defendants contend that the "mixture or substance" language applies only to marijuana after it has been prepared for illegal distribution. The defendants' position has been adopted by at least one court. *United States v. Miller*, 680 F. Supp. 1189 (E.D. Tenn. 1988).

> The amendment is intended to curtail this unnecessary debate by providing that the minimum penalty is triggered either by the weight of the "mixture or substance" or by the number of plants regardless of weight. The bill uses 1,000 plants as the equivalent of 1,000 kilograms.

134 Cong. Rec. 32,700 (1988). Nothing in Senator Biden's discussion of § 6479 can be interpreted as expressing an intent that the one plant/one kilogram equivalency applies only if the government

first proves the defendant was a grower of marijuana.

We are aware of a line of cases holding, despite the dearth of legislative history, that courts can infer that one of the purposes of the one plant/one kilogram equivalency is to punish marijuana growers more severely than other defendants. This line of cases began with *United States v. Fitol*, 733 F. Supp. 1312 (D. Minn. 1990), in which the district court stated:

> It seems clear ... that by changing the determining factor from weight to number of "plants *regardless of weight*," Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marihuana plants to be as culpable as one who has successfully grown 100 kilograms of marijuana.

*Id.* at 1315 (emphasis in the original). The *Fitol* court's interpretation of Congress's intent has gained a wide following, both in this Circuit and in others. *See United States v. Jackson*, 11 F.3d 953, 956 (10th Cir. 1993) ("Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment." (Citation and internal quotation marks omitted); *Cody*, 7 F.3d at 1528 ("This sentencing elevation is ... a reflection of Congress's belief that growing a large number of plants (capable of large scale distribution) is an exponentially more severe offense than growing a small number." (Citation and internal quotation marks omitted.)); *United States v. Occhipinti*, 998 F.2d 791, 802 (10th Cir. 1993) ("[W]e rejected a challenge to the constitutionality of the minimum sentencing provisions found at 21 U.S.C. § 841(b)(1)(B)(vii), holding that Congress rationally intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized at a given moment." (Citations and internal quotation marks omitted.)); *United States v. Lee*, 957 F.2d 778, 784 (10th

-10-

Cir.) ("Congress intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized at a given moment. In our view, the cultivation of marijuana plants creates a greater potential for abuse than possession of harvested marijuana."), *cert. denied*, 506 U.S. 978 (1992); *United States v. Eves*, 932 F.2d 856, 859 (10th Cir.) (same), *cert denied*, 502 U.S. 884 (1991); *see also United States v. Carvell*, 74 F.3d 8, 9 n. 1 (1st Cir. 1996) ("'Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight [or size] of the plants seized at a given moment.'" (Quoting *United States v. McMahon*, 935 F.2d 397, 401 (1st Cir.), *cert. denied*, 502 U.S. 897 (1991))); *United States v. Proyect*, 989 F.2d 84, 88 (2d Cir.) ("[I]n enacting a mandatory minimum sentence based solely on the number of plants a grower possesses, Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment.") (citations and internal quotation marks omitted), *cert. denied*, 114 S. Ct. 80 (1993); *United States v. Murphy*, 979 F.2d 287, 290 (2d Cir. 1992) ("Congress wanted to penalize large scale growers more harshly than small time offenders.... After all, if there were no large scale growers of marijuana it is unlikely that there could be large scale sellers of marijuana."); *United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir. 1996) ("By providing that processed marijuana be measured by weight but live plants be counted by number and then treated as the equivalent of an amount of dry marijuana as set by statute, Congress has established a system of stepped-up punishment for growers.") (footnotes omitted); *United States v. Holmes*, 961 F.2d 599, 601 (6th Cir.) ("Congress and the Sentencing Commission [have] adopted a view that a person who grows over 1,000 marijuana plants is equally culpable as a person who harvests over 1000 kilograms of marijuana"), *cert. denied*, 506 U.S. 881 (1992); *United States v. Young*, 34 F.3d 500, 506 (7th Cir. 1994) (equivalency

provision "'reflects Congress' judgment that an individual who grows 150 plants is just as culpable as one who has distributed 150 kilograms of marijuana.'" (Quoting *United States v. Haynes*, 969 F.2d 569, 571 (7th Cir. 1992))); *United States v. Smith*, 961 F.2d 1389, 1390 (8th Cir. 1992) ("The cases suggest Congress intended to account for the heightened culpability of growers because of their primacy in the distribution chain, rather than to punish them based on predictable yield of their plants."); *United States v. Wegner*, 46 F.3d 924, 926 (9th Cir. 1995) ("Our precedent unambiguously endorses the view that the one kilogram conversion ratio represents congressional intent to punish growers of 50 or more marijuana plants to a greater extent than smaller producers or mere possessors."); *United States v. Foree*, 43 F.3d 1572, 1581 (11th Cir. 1995) (21 U.S.C. § 841(b) "punishes marijuana growers by relying in sentencing on the number of live plants recovered rather than marijuana weight").

We are in substantial agreement with the conclusion in the *Fitol* line of cases that at least one of the reasons, and perhaps the main reason, Congress enacted the one plant/one kilogram equivalency was to punish growers more severely that others. We do not believe, however, that this line of cases supports Mr. Silvers' position. First, none of the above cases holds the government must prove the defendant was a grower in order to obtain a sentence under the one plant/one kilogram equivalency. Second, the mere fact one of the legislative purposes of the one plant/one kilogram equivalency was to punish growers more severely does not mandate the conclusion that the government must prove the defendant was a grower before that equivalency can be applied. Had Congress intended to focus the impact of this statute so narrowly and limit its application in this way, Congress would have demonstrated its intent in the text of the statute or in some other clear and

unambiguous fashion.

Third, we believe it is equally plausible that Congress' purpose was broader than Mr. Silvers suggests. The marijuana industry is very much like any other agricultural business, and the people involved in it have the same basic roles as their counterparts in the legitimate agricultural trade: some plant the seeds, some tend and water the plants, some harvest the plants when they are mature, some dry the plants, some cut and package them, some ship them, and some distribute them to the wholesale and retail markets. One could easily conclude that when Congress enacted 21 U.S.C. § 841(b)(1)(A)(vii), it intended only to distinguish between individuals involved in production and individuals involved only in shipping, distribution, and sales, and to impose a harsher penalty on those involved in production, regardless of whether those individuals are growers, harvesters, driers, etc. One could also conclude Congress sought to achieve this goal merely by punishing those who possess plants more harshly than those who possess processed marijuana, reasoning that those who possess plants are involved in the early stages of the production process, whereas those who possess processed marijuana are involved only in shipping, distribution, or sales. To effectuate this broader legislative purpose, we conclude it is necessary for the government to prove only that the defendant possessed plants, and it is not be necessary for the government to prove the defendant's individual role in the production of marijuana, i.e., that he was a grower.

Furthermore, contrary to Mr. Silvers' contention, there is nothing in the United States Sentencing Guidelines that conflicts with our conclusion. The footnote to the Drug Quantity Table, on which the probation department and the district court relied in this case, states merely:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. §2D1.1(c) (n.*) (emphasis in the original). In the commentary to this guideline, the Commission explains:

> In cases involving fifty or more marihuana plants, an equivalency of one plant to one kilogram of marihuana is derived from the statutory penalty provisions of 21 U.S.C. § 841(b)(1)(A), (B), and (D). In cases involving fewer than fifty plants, the statute is silent as to the equivalency. For cases involving fewer than fifty plants, the Commission has adopted an equivalency of 100 grams per plant, or the actual weight of the usable marihuana, whichever is greater. The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana.

U.S.S.G. §2D1.1, comment. (backg'd). Neither provision suggests the government must prove the defendant was a grower in order to obtain a sentence using the one plant/one kilogram equivalency.

Mr. Silvers makes much of the fact that the Sentencing Commission amended the above provisions effective November 1, 1995. U.S.S.G. App. C, amend. 516. The amendment rewrote the footnote to the Drug Quantity Table, quoted above, to read as follows:

> In the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

(Emphasis in the original.) The amendment also rewrote the above-quoted portion of U.S.S.G. § 2D1.1, comment. (backg'd):

> For marihuana plants, the Commission has adopted an equivalency of 100

grams per plant, or the actual weight of the usable marihuana, whichever is greater. The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana.

The Commission gave the following justification for the amendment:

> For offenses involving 50 or more marihuana plants, the existing § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking; Attempt or Conspiracy) uses an equivalency of one plant = one kilogram of marihuana, reflecting the quantities associated with the five- and ten-year mandatory minimum penalties in 21 U.S.C. § 841. For offenses involving fewer than 50 marihuana plants, the guidelines use an equivalency of one plant = 100 grams of marihuana, unless the weight of the actual marihuana is greater. In actuality, a marihuana plant does not produce a yield of one kilogram of marihuana. The one plant = 100 grams of marihuana equivalency used by the Commission for offenses involving fewer than 50 marihuana plants was selected as a reasonable approximation of the actual average yield of marihuana plants taking into account (1) studies reporting the actual yield of marihuana plants (37.5 to 412 grams depending on growing conditions); (2) that all plants regardless of size are counted for guideline purposes while, in actuality, not all plants will produce useable marihuana (e.g., some plants may die of disease before maturity, and when plants are grown outdoors some plants may be consumed by animals); and (3) that male plants, which are counted for guideline purposes, are frequently culled because they do not produce the same quality of marihuana as do female plants. To enhance fairness and consistency, this amendment adopts the equivalency of 100 grams per marihuana plant for all guideline determinations.

U.S.S.G. App. C, amend. 516.

We see nothing in U.S.S.G. App. C, amend. 516, that impacts our conclusion in this case. First, U.S.S.G. App. C, amend. 516, neither states nor implies that the government must prove the defendant was a grower in order to obtain a sentence under the revised one plant/100 gram equivalency. Second, although our resolution of the issue must await another day, it should be noted that it is far from clear whether U.S.S.G. App. C, amend. 516, is a valid exercise of the Commission's rulemaking authority, *see United States v. Novey*, 78 F.3d 1483, 1486 (10th Cir. 1996)

-15-

(Sentencing Commission does not have authority to override or amend statute), given that it conflicts with Congress' intent to treat one plant as equivalent to one kilogram of marijuana, as reflected in 21 U.S.C. § 841(b)(1)(A)(vii). Third, it is true that the Commission has issued a policy statement stating this amendment may be applied retroactively, U.S.S.G. §1B1.10(a, c), and therefore the district courts have discretion to reduce existing sentences in light of this amendment under appropriate circumstances, assuming of course that the amendment is valid. *See United States v. Telman*, 28 F.3d 94, 96 (10th Cir. 1994). Mr. Silvers is not entitled to such a reduction, however, because he received the statutory mandatory minimum sentence, and U.S.S.G. App. C, amend. 516, cannot be retroactively applied to bring his sentence below that statutory mandatory minimum. U.S.S.G. §5G1.1(c)(2).

In light of the above, we reject Mr. Silvers' contention the one plant/one kilogram equivalency prescribed in 21 U.S.C. § 841(b)(1)(A)(vii) applies only if the government proves the defendant actually grew the marijuana in question.

B.      *The Meaning of the Word "Plants" in 21 U.S.C. § 841(b)(1)(A)(vii)*

Mr. Silvers contends that in order for the government to obtain a sentence on the basis of the one plant/one kilogram equivalency in 21 U.S.C. § 841(b)(1)(A)(vii), the government must prove it actually seized "plants" from the defendant's possession, and that plants are not "plants" for sentencing purposes unless they are alive. We reject Mr. Silvers' contention. Again, first and foremost, there is nothing in the language or legislative history of 21 U.S.C. § 841(b)(1)(A)(vii) to support Mr. Silvers' position. *See Fletcher*, 74 F.3d at 55 ("Congress has not further subdivided live

marijuana plants into growing plants and cut plants."). The statute states merely the one plant/one kilogram equivalency applies if the government proves 1,000 "plants" are attributable to the defendant. There is nothing in the statute requiring the government to prove the additional elements Mr. Silvers urges us to embrace. Were we to so hold, our decision would be based on nothing more than judicial fiat.

Second, in *Eves*, 932 F.2d at 860, we concluded there was not "any aspect of legislative history that supports [the] theory that Congress intended 'plant' to be construed other than by its plain and ordinary dictionary meaning." *See Chapman v. United States*, 500 U.S. 453, 461-62 (1991) (if a word in a statute or the Sentencing Guidelines is not defined therein, and does not have an "established common law meaning," the word "must be given [its] ordinary meaning"); *Floyd*, ___ F.3d at ___, 1996 WL 189800 at *4. We did note, however, that "the congressional intent was to simplify, not to complicate, the method of determining the high end or low end mandatory sentences," and that if we were to require the government to prove the plants were alive at the time of seizure, our conclusion would, in effect, "require police officers to possess infrared gas analyzers to determine whether gas exchange is occurring in marijuana growth [and] to undergo botanical training in order to observe marijuana ... over a period of time to see whether increments of new tissue appear." *Eves*, 932 F.2d at 860. To create such a requirement, we held, "would be to turn our face on the legislative purpose." *Id.* With these concerns in mind, we concluded

> the definition intended by Congress is the one accepted by the district court here: a marijuana "plant" includes those cuttings accompanied by root balls. Whether the plant could survive on its own would not be an issue; if it looks like a "plant" -- that is, if it has a reasonable root system -- it will be considered a "plant." No expert need testify, no experiments with instrumentation to monitor whether gaseous exchange

-17-

is occurring need be conducted, no elaborate trimester or viability system need be established. If a cutting has a root ball attached it will be considered a plant.

*Id.* Although the marijuana in *Eves* was in "plant" form at the time of seizure, there is nothing in our opinion to suggest the government must prove that the marijuana was in plant form at the time of seizure in every case to obtain a sentence under the one plant/one kilogram equivalency prescribed in either 21 U.S.C. § 841(b)(1)(A) or U.S.S.G. §2D1.1(c). Furthermore, *Eves* makes it clear a marijuana plant can be considered a "plant" for sentencing purposes even if the government cannot prove it was alive.

Third, effective November 1, 1995, the Sentencing Commission embraced our definition of the word "plant" as used in U.S.S.G. §2D1.1 by adding application note 18, which provides:

> For purposes of the guidelines, a "plant" is an organism having leaves and a readily observable root formation (e.g., a marihuana cutting having roots, a rootball, or root hairs is a marihuana plant).

U.S.S.G. §2D1.1(c), comment. (n.18). The Commission explained the amendment as follows:

> [T]his amendment addresses the issue of what constitutes a marihuana plant. Several circuits have confronted the issue of when a cutting from a marihuana plant becomes a "plant." The appellate courts generally have held that the term "plant" should be defined by its plain and ordinary dictionary meaning.... [A] marihuana 'plant' includes those cuttings accompanied by root balls.... Because this issue arises frequently, this amendment adds an application note to the Commentary of §2D1.1 setting forth the definition of a plant for guidelines purposes.

U.S.S.G. App. C, amend. 518 (citations and internal quotation marks omitted). Of course, U.S.S.G. §2D1.1, comment. (n.18), has no direct application to this case. This is so because it did not become effective until November 1, 1995, some eight months after Mr. Silvers was sentenced, and it is not

-18-

retroactive. U.S.S.G. §1B1.10(a, c). Furthermore, Mr. Silvers' sentence stands or falls depending on the applicability of the statutory mandatory minimum in 21 U.S.C. § 841(b)(1)(A)(vii), and it is irrelevant what his base offense level is under U.S.S.G. §2D1.1(c), given that the district court sentenced Mr. Silvers to the statutory mandatory minimum term of 120 months. Nevertheless, we believe the Commission's decision to embrace our definition of the word "plants" is noteworthy because it underscores the correctness of our definition in *Eves*. More importantly, it should be noted the definition of the word "plant" in U.S.S.G. §2D1.1, comment. (n.18), like our definition in *Eves*, does not require the government to prove the plants were in plant form at the time of seizure or that they were alive.

Finally, we find none of the cases from our sister circuits holding the marijuana must be in "plant" form at the time of seizure, *see United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992)*,* or that a plant is not a "plant" unless it is alive, *see United States v. Stevens*, 25 F.3d 318, 320-23 (6th Cir. 1994), and *United States v. Osburn*, 955 F.2d 1500, 1509 (11th Cir.), *cert. denied*, 506 U.S. 878 (1992), to be persuasive. First, as noted above, neither the statute, the guidelines, nor our case law impose such requirements. Second, were we to embrace the holdings in *Blume*, *Osburn*, and *Stevens*, we would be adopting a special, heightened standard of proof in cases involving marijuana plants, which would conflict strikingly with the standard of proof in cases involving all other drugs. We have held countless times that if no drugs are actually seized, the government can nevertheless prove the type and quantity of drugs attributable to the defendant through other evidence, and may also rely on estimates to approximate quantity provided there are sufficient indicia of reliability to support the estimate's probable accuracy. *See, e.g., Owens*, 70 F.3d at 1130; *United States v. Hooks*,

65 F.3d 850, 854 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 797 (1996); *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993); U.S.S.G. §6A1.3(a). We see no basis for such a special rule in either the statute, the guidelines, or our case law. We therefore embrace the holdings of the Fourth, Seventh, and Ninth Circuits. *See Fletcher*, 74 F.3d at 55 (marijuana plant can be a plant even if it is not "alive"); *Haynes*, 969 F.2d at 572-73 (marijuana need not be in plant form at the time of seizure); *Wegner*, 46 F.3d at 926-27 (same). In light of our conclusion, the government is required to prove by a preponderance of either direct or circumstantial evidence only that the defendant possessed with the intent to distribute or distributed marijuana plants as defined in *Eves*, 932 F.2d at 860, at some point in time in order to obtain a sentence under the one plant/one kilogram equivalency in 21 U.S.C. § 841(b)(1)(A)(vii).

C.      *Sufficiency of the Evidence to Support the District Court's Finding 1,000 Marijuana Plants Were Attributable to Mr. Silvers*

Mr. Silvers' presentence report states "an excess of 1,000 plants" were attributable to him. The probation department based its conclusion primarily on information provided by one of Mr. Silvers' codefendants, Sandra Wolfe. Specifically, the presentence report states, "Wolfe ... advised the plants numbered more than 1,000" and "Wolfe indicated over 1,000 plants were harvested by Mintz and his associates." Mr. Silvers objected to the probation department's reliance on Ms. Wolfe's statements because the district court had stated in its earlier order denying the government's second motion for reconsideration of the order dismissing Count 1 of the superseding indictment that "there are serious credibility problems with defendant Wolfe." In that order, however, the district court did not expressly find Ms. Wolfe had lied. Instead, the district court stated it could not "find

solely by virtue of the affidavit of Sandra Wolfe, who is seeking leniency in treatment by the government, that she was not in fact truthful in her testimony before this court and in a previous meeting with counsel for several of the defendants."

In response to Mr. Silvers' objections, the government stated:

The trial Court relied on affidavits from Mintz and Silvers in making its determination that the conspiracies alleged separately in Florida and Kansas were one and the same. The Court chose not to believe Ms. Wolfe in that regard. In hindsight, had the Court known then what is readily apparent now, that Mintz was a pathological liar and manipulator, the results likely would have been different. Also, bear in mind Ms. Wolfe's emotional state and her conflict with counsel at the time of that hearing....

Ms. Wolfe is adamant in her assertions that this matter involved over 1,000 marijuana plants. She took Special Agent Myers to an area where several acres of marijuana plants were growing, and later harvested by Mintz, Silvers, et al. This is just one of many areas harvested by Silvers, et al. Recall that they harvested everything they could.

The government also relied on a statement by Louis Charles Sheptin, one of codefendant Michael Mintz's fellow inmates, that Mr. Mintz told him he, Mr. Silvers, and others had cultivated and processed over 2,500 marijuana plants.

At the sentencing hearing, the district court apparently changed its opinion regarding Ms. Wolfe's credibility, at least with respect to her statements regarding the number of marijuana plants attributable to Mr. Silvers. In overruling Mr. Silvers' objection, the district court stated:

[T]he Court finds that the presentence investigation report correctly uses 1,000 or more marijuana plants to calculate the defendant's guideline range....

The Court finds there is credible and sufficient evidence to find the defendant was accountable for this quantity of drugs. It was within the scope of this jointly

-21-

undertaken criminal activity and was reasonable foreseeable ....

Mr. Silvers now contends the district court erred in relying on Ms. Wolfe's statements given that the district court had previously found her credibility doubtful, and on Mr. Mintz out-of-court statements to Mr. Sheptin, given the government's admission Mr. Mintz is a pathological liar. Mr. Silvers further notes Ms. Wolfe's and Mr. Mintz's statements are inconsistent with other statements they made in the past. We agree that both Ms. Wolfe's and Mr. Mintz's credibility is, to say the least, uncertain. However, it is well established that "credibility determinations are for the district court ... and we will therefore not reexamine the credibility of a witness' testimony on appeal." *Hooks*, 65 F.3d at 854 (citations and internal quotation marks omitted). The district court has made a finding regarding credibility, and we will not now second-guess that finding. Because Ms. Wolfe's and Mr. Mintz's statements support the district court's factual determination 1,000 marijuana plants are attributable to Mr. Silvers, we conclude its determination was not clear error.

**IV**

For the reasons stated, we find no fault with the district court's conclusion Mr. Silvers is subject to the mandatory minimum penalties prescribed in 21 U.S.C. § 841(b)(1)(A)(vii). Because the district court imposed the minimum term of imprisonment allowed under that statute, Mr. Silvers' contentions regarding the district court's application of the Sentencing Guidelines are unavailing, because any errors the district court might have committed were harmless. Mr. Silvers' sentence is therefore **AFFIRMED**.

-22-

No. 95-3089, United States v. Paul Silvers

BARRETT, Senior Circuit Judge, dissenting:

I respectfully dissent. My review of the case law leads me to conclude that in order to be sentenced based on the number of plants rather than the weight of marijuana, the defendant must be a grower of marijuana.

The circuits which have considered this issue, including this circuit, are unanimous that in amending 21 U.S.C. § 841(b)(1)(A)(ii) and U.S.S.G. § 2D1.1 to specifically include plants separately from the weight of the marijuana, Congress intended to punish growers of marijuana differently than those defendants who merely possess marijuana.

In United States v. Eves, 932 F.2d 856 (10th Cir.), cert. denied, 502 U.S. 884 (1991), we observed that in United States v. Fitol, 733 F. Supp. 1312 (D. Minn. 1990), Judge Devitt "thoroughly reviewed the legislative history of the Sentencing Guidelines and concluded that:

> by changing the determining factor from weight to number of "plants regardless of weight" Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marijuana plants to be just as culpable as one who has successfully grown 100 kilograms of marijuana."

Eves, 932 F.2d at 859 (quoting Fitol, 733 F. Supp. at 1315).

In United States v. Lee, 957 F.2d 778, 784 (10th Cir.), cert. denied, 506 U.S. 978 (1992), we stated that:

We must hold that the district court erred in finding/concluding that because a single marijuana plant could not produce a kilogram of marijuana substance, the statute punished defendants who grow marijuana plants more severely than those who possess harvested marijuana and is, accordingly, violative of equal protection guarantees. . . .  We agree with Judge Devitt's observation in Fitol, *supra*, that Congress intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized at a given moment.  In our view, the cultivation of marijuana plants creates a greater potential for abuse than possession of harvested marijuana.

See also United States v. Jackson, 11 F.3d 953, 956 (10th Cir. 1993) ("Rather, as we recognized in [Lee], 'Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment.'"); United States v. Cody, 7 F.3d 1523, 1528 (10th Cir. 1993) (The equivalency provision "is a reflection of Congress' belief that growing a large number of plants (capable of large scale distribution) is an exponentially more severe offense than growing a small number.") (quoting United States v. Osburn, 955 F.2d 1500, 1508 (11th Cir.), cert. denied, 506 U.S. 878 & 901 (1992)); United States v. Occhipinti, 998 F.2d 791, 802 (10th Cir. 1993) ("[W]e rejected a challenge to the constitutionality of the minimum sentencing provisions found at 21 U.S.C. § 841(b)(1)(B)(vii), holding that Congress rationally 'intended to punish growers of marijuana by the scale or potential of their operation and not just the weight of the plants seized at a given moment.'") (quoting Lee, 957 F.2d at 784).

Based on Eves, Lee, Jackson, Cody, and Occhipinti from this circuit and the decisions of the eight other circuits cited by the majority[1], I would hold that a defendant cannot be sentenced based on the number of marijuana plants as opposed to the actual weight of the marijuana under the

---

[1]    See United States v. Carvell, 74 F.3d 8, 9 n.1 (1st Cir. 1996); United States v. Proyect, 989 F.2d 84, 88 (2d Cir.); United States v. Murphy, 979 F.2d 287, 290 (2nd Cir. 1992); United States v. Fletcher, 74 F.3d 49, 55 (4th Cir. 1996); United States v. Heater, 63 F.3d 311, 322 (4th Cir. 1995); United States v. Stevens, 25 F.3d 318, 320-23 (6th Cir. 1994); United States v. Holmes, 961 F.2d 599, 601 (6th Cir.); United States v. Young, 34 F.3d 500, 506 (7th Cir. 1994); United States v. Smith, 961 F.2d 1389, 1390 (8th Cir. 1992); United States v. Wegner, 46 F.3d 924, 926 (9th Cir. 1995); United States v. Foree, 43 F.3d 1572, 1581 (11th Cir. 1995).

equivalency provision of U.S.S.G. § 2D1.1 unless he or she is grower of marijuana.

Unlike the majority, I do not view these cases as simply stating one reason for Congress' enactment of the one plant/one kilogram equivalency. In holding that Congress intended to punish growers with this "stepped-up punishment," the courts have recognized the anomaly created where individuals at different stages in production are treated much differently, evidencing that the harsher sentencing provision was not intended to extend further down the chain of production. See United States v. Osburn, 955 F.2d 1500, 1509 (11th Cir.) (the market-oriented approach "*mandates* different treatment for individuals involved in different aspects of the distribution of a drug."), cert. denied, 506 U.S. 878 & 901 (1992). See also United States v. Rogers, 1993 WL 12672 (10th Cir. 1993) ("It is true that a marijuana grower, arrested prior to harvesting, is sentenced on a one kilogram-per-plant basis. On the other hand, a marijuana grower, arrested immediately after harvesting, is sentenced according to the actual weight of the marijuana, . . ..").

Significantly, there is no evidence that Silvers engaged in the process of "growing" marijuana in Kansas. To the contrary, the evidence relating to the marijuana in question was limited to Wolfe's testimony summarizing the manner in which she located the fields of wild marijuana, (Appendix of Appellant at 120-22, 123-25, 126-27), and Mintz's testimony summarizing his travels to Kansas to set up a base operation for harvesting and processing the wild marijuana. Id. at 128-32, 133-35. The government's case against Silvers was predicated upon his participation in harvesting wild marijuana and his possession of harvested wild marijuana with the intent to distribute it. The government did not present any evidence that Silvers had engaged in growing marijuana in Kansas nor that Silvers had ever possessed any marijuana plants.

Therefore, I would vacate the sentence imposed on Silvers and remand for resentencing on

the basis of the weight of the marijuana involved.