UNITED STATES of America, Appellee,

v.

Mark Alan WILSON, also known as Lame, Appellant.

No. 94–2404.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1994.

Decided March 1, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied April 18, 1995.*

* Judge Murphy took no part in the consideration or decision of this case.

David Lorin Ward, Minneapolis, MN, argued for appellant.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, MN, argued for appellee.

Before McMILLIAN, Circuit Judge,
JOHN R. GIBSON, Senior Circuit Judge,
and SHAW,** District Judge.

McMILLIAN, Circuit Judge.

Mark Alan Wilson appeals from a final judgment entered in the United States District Court[1] for the District of Minnesota, upon a jury verdict finding him guilty of one count of conspiracy to manufacture and distribute marijuana and two counts of aiding and abetting possession with intent to distribute marijuana. The district court sentenced Wilson under the federal sentencing guidelines to 168 months imprisonment, five years supervised release, and a special assessment of $150.00. *United States v. Wilson*, Crim. No. 5–93–10(02) (D.Minn. June 1, 1994) (Sentencing Memorandum). For reversal, Wilson argues: (1) there was insufficient evidence to prove his guilt beyond a reasonable doubt, and (2) the district court erred in determining Wilson's base offense level by using plant count estimates rather than harvested weight. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

This case arises from the investigation of a large scale marijuana growing and distribution scheme in northern Minnesota which was in operation from 1989 to 1991. Wilson and over ten other persons moved from southeastern Ohio to Minnesota for the purpose of purchasing farms and cultivating large quantities of marijuana. In 1991, deputies conducting a search in several northern Minnesota counties found five marijuana farms and arrested four men who were tending to the plants. Over 5,000 marijuana plants were located on these five farms. With the assistance of some of the individuals arrested, the authorities located other members of the operation, including Wilson.

In total, six accomplice witnesses testified against Wilson at trial. Their testimony provided extensive details about Wilson's substantial involvement in the growing, harvesting, and distributing of marijuana plants. One of the original members of the group was Scott Dennis, who had known Wilson since they met at Ohio University fifteen years earlier. Dennis invited Wilson to join the operation, and Wilson participated in 1989 and 1990. Dennis testified that in 1989, he gave Wilson $15,000 to buy a farm near Sebeka, Minnesota. Wilson purchased the farm using the name Jeff L. Martin, and Wilson and Dennis together tilled and planted the 1989 marijuana crop at Wilson's farm. Wilson lived on the farm and received 60 percent of the profits. Another member of the group, George Williams, corroborated Dennis's testimony as to Wilson's activities on the farm in 1989. Wilson himself admitted that he purchased the farm using a false identity. In 1990, the group planted large crops at three of the farms, including Wilson's. Wilson was again involved in the planting and cultivation of the crop. Throughout the summer of 1990, Wilson lived on the farm and watched over the marijuana. Wilson also helped with the planting done on the other two farms. Williams said that the conspirators planted 3,000 plants at Wilson's farm and harvested about 1,500. They also planted 3,000 plants at another farm. Williams testified that, aside from 1,000 cloned plants from Athens, Ohio, all the plants came from a seed bed at Wilson's farm.

Wilson took the stand in his own defense and emphatically denied that he ever knowingly participated in a marijuana growing and selling conspiracy. Wilson testified that he recalled placing some bets on sporting events through Dennis during their college days. In the fall of 1988, Dennis began to send Wilson to Las Vegas to place his bets and collect winnings. Wilson made four trips in all. On his final trip, Wilson passed out in his hotel room before placing the wagers as directed, an error which cost Dennis $18,000. Wilson stated that Dennis's violent threats made him fearful for the safety of his family. According to Wilson, Dennis proposed that Wilson work off his debt by traveling to Minnesota to help him illegally smuggle ciga-

** The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Diana E. Murphy, then Chief Judge, United States District Court for the District of Minnesota.

rettes into Canada. Wilson admitted that he purchased the farm, but claimed it was part of the cigarette smuggling operation. Wilson testified that he never stayed overnight on the farm and that on the occasions he visited the farm, he never saw any marijuana. Wilson maintained he first heard of the marijuana growing operation when he learned of the seizure of the Sebeka farm in the summer of 1991.

## II. DISCUSSION

### A. Sufficiency of the Evidence.

■ In reviewing Wilson's insufficiency claim, we examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences, and we may reverse only if we can conclude that a reasonable factfinder could not have found the defendant's guilt beyond a reasonable doubt. *United States v. Zerba*, 21 F.3d 250, 252 (8th Cir.1994). The jury, not the reviewing court, evaluates the credibility of witness testimony and the weight to be given to that testimony. *Id.* Moreover, accomplice testimony is sufficient to support a conviction when it is not incredible or insubstantial on its face. *United States v. Drews*, 877 F.2d 10, 13 (8th Cir.1989).

■ The evidence of Wilson's guilt in this case was not insufficient, but abundant. The six accomplice witnesses gave detailed testimony which consistently implicated Wilson in a substantial portion of the planting and harvesting activities of the conspiracy in 1989 and 1990. Their testimony was further corroborated by the discovery of the marijuana farms by law enforcement officials in 1991. Moreover, Wilson himself admitted that he purchased the farm near Sebeka using a false identity. Wilson argues that we should take into account the fact that the six accomplice witnesses each testified in accordance with a plea agreement. Further, he contends that he provided a reasonable explanation for his purchase of the farm and his presence in northern Minnesota. Even if we were inclined to believe Wilson's cigarette

smuggling story, we will not reverse on such grounds because we are not finders of fact, and we will not accept the invitation to assess witness credibility on appeal. Because there was more than sufficient evidence to support the jury's verdict finding Wilson guilty beyond a reasonable doubt, we hold that his conviction was constitutionally sound.

### B. Sentencing Issues.

Wilson next alleges that the district court erred in determining his base offense level for sentencing by using plant count estimates rather than harvested weight. The district court determined that Wilson's base offense level was 34 based upon a finding that the marijuana plants to be attributed to Wilson were between 3,000 and 10,000 plants which were to be converted to weight by applying the one kilogram per plant provision in § 2D1.1(c) of the sentencing guidelines.[2] Wilson first argues that the district court's sentencing findings do not indicate the manner in which it resolved the quantity issue because "[t]here is no indication whether the court relied upon the plant numbers in the PSR or based its decision upon specific trial testimony." Brief of Appellant at 26.

■ A district court's findings as to the quantity of drugs attributable to a criminal defendant at sentencing will not be overturned unless clearly erroneous. *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995). This court reviews *de novo* the district court's application of the sentencing guidelines to the facts of the underlying case. *United States v. Wilson*, 41 F.3d 399, 401 (8th Cir. 1994).

■ Wilson's contention that the district court did not indicate the source upon which it relied for the plant count is without merit. The district court stated that it adopted the factual statements contained in the presentence investigation report (PSR) and the PSR's application of the guidelines to the facts. The PSR provided that the total

**2.** The drug quantity table of U.S.S.G. § 2D1.1(c) provides in relevant part: "In the case of an offense involving marijuana plants, if the offense involved (A) 50 or more marijuana plants, treat each plant as equivalent to 1 KG of marijuana."

amount of marijuana associated with Wilson was over 4,000 plants or between 3,000 and 10,000. These figures were corroborated by the testimony of Williams and Dennis at trial. Applying § 2D1.1(c), the PSR concluded that Wilson's base offense level should be 34.[3] The district court was clear in its adoption of the findings of the PSR, and we further hold that such findings were not clearly erroneous.

 Wilson lastly argues that the district court erred in its application of the guidelines by using the plant count to weight conversion of § 2D1.1(c) instead of harvested drug weight to determine his base offense level. Wilson argues that the plant count conversion should only be applied to seized live plants. Wilson contends that to apply the plant count to weight conversion in § 2D1.1(c) in the present case would be to drastically extend the scope of the conversion principle because the record in this case provides that the marijuana attributed to him was harvested, shucked, packaged, and sold many months before law enforcement personnel intervened.

 We are faced here with an argument which was rejected by the Seventh Circuit in *United States v. Montgomery*, 990 F.2d 266 (7th Cir.1993). In that case, the court held that the defendant could be sentenced based on the number of plants, as opposed to the actual weight of the marijuana, despite the fact that the marijuana had been harvested, processed, sold, and possibly smoked by the time the government discovered the conspiracy, because the defendant "entered the conspiracy early and helped cultivate, harvest and process the marijuana plants." *Id.* at 269. A legitimate goal of § 2D1.1(c) is to punish those guilty of offenses involving marijuana plants more severely in order to get at the root of the drug problem. In the present case, as in *United States v. Montgomery*, there was considerable evidence of Wilson's participation in the planting and cultivation of marijuana plants.

Thus, following the plain language of the guidelines, this must be an offense "involving marijuana plants." *See* U.S.S.G. § 2D1.1(c). Accordingly, we hold that where, as here, the evidence demonstrates that an offender was involved in the planting, cultivation, and harvesting of marijuana plants, the application of the plant count to drug weight conversion of § 2D1.1(c) is appropriate. Therefore, the district court did not err in sentencing Wilson under this provision of the sentencing guidelines.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

---

**3.** Wilson's adjusted base offense level was 36 because he was given a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the guidelines. The district court found that Wilson's testimony at trial that he had never seen

any marijuana growing operations on the farms and that the group was attempting to smuggle cigarettes was not credible and related to a material issue in the case.