**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-60063

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT G. FITCH,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

March 17, 1998

Before DAVIS, JONES,and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Defendant-appellant, Robert G. Fitch (R.G. Fitch), was charged in a five count superseding indictment with one count of conspiring to manufacture, distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. §§841 and 846 (count 1) and with two counts of knowingly and intentionally manufacturing, distributing and possessing with intent to distribute marijuana in violation of 21 U.S.C. §841 (counts two and three).[1]  Following a

_____

[1]Robert G. Fitch was indicted in counts one through three. His co-defendant and son, Robert R. "Bo" Fitch, was named in counts one through three and also in count four.  Count five involved a forfeiture of property and was dismissed prior to sentencing.

trial by jury, the defendant was found guilty on each count. The district court ordered a pre-sentence investigation report (PSR) which recommended that R.G. Fitch be sentenced for offenses involving 1,187 marijuana plants. According to the equivalency ratio of one plant to 100 grams of United States Sentencing Guideline (U.S.S.G.) §2D1.1(c)n*(E), the defendant's offense involved a total drug quantity of approximately 118 kilograms of marijuana. Based on the total drug quantity involved, the defendant's total offense level was calculated to be 26, along with a criminal history of I, making for a guideline range of 63 to 78 months. *See* U.S.S.G. §2D1.1(c)(7). Because over 1,000 marijuana plants were attributed to the defendant, however, the statutorily required minimum sentence was ten (10) years imprisonment pursuant to 21 U.S.C. §841(b)(1)(A)(vii). Because the legislated mandatory minimum sentence was greater than the maximum sentence under the defendant's applicable guideline range the statutorily required minimum sentence applied under the guidelines as well. U.S.S.G. §5G1.1(b).

At the sentencing hearing, R.G. Fitch objected to the PSR and argued, among other things, that he should not be subject to the statutory minimum dictated by §841(b)(1)(A)(vii) because he should not be held accountable for over 1,000 marijuana plants. The defendant's argument centered upon the fact that 288 of the marijuana plants seized by the government and attributed to him by the PSR were in post-harvest form, i.e. they were not live plants but dry dead husks. Therefore, these dead remains, he contends,

2

should not be counted as "plants" under 21 U.S.C. §841(b)(1)(A)(vii). The sentencing judge rejected the defendant's assertion and sentenced him to ten years imprisonment. We conclude that the defendant's argument is not supported by the plain language of the statute and affirm.[2]

## Background

In the latter part of 1992, Robert R. "Bo" Fitch of Holly Springs, Mississippi began selling marijuana to David Carter and Lloyd Thompson, residents of Memphis, Tennessee. Through Thompson, Bo Fitch became acquainted with William Grammar, also of Memphis. By early 1993, Grammer was purchasing from one ounce to a quarter pound of marijuana from Bo on a weekly or twice weekly basis.

Grammer requested marijuana deliveries by telephoning Bo at the Fitch family residence in Holly Springs where Bo lived with his

---

[2]On appeal, the defendant raises a number of points of error with regard to his conviction and sentence, *viz.* (1) that the evidence was insufficient to sustain his conviction, (2) that a fatal variance existed between the indictment and the evidence introduced at trial, (3) that the district court erred in refusing to give a multiple-conspiracy jury instruction, (4) that the district court erred in refusing to instruct the jury that it was not to "pile inference upon inference" in order to find the defendant guilty of conspiracy, (5) that the trial court erred in admitting testimony regarding an out-of-court statement of a co-conspirator, (6) that the district court erred in allowing the government to question a witness concerning the August 1993 seizure of marijuana from the defendant's farm, (7) that the district court failed to properly apply U.S.S.G. §1B1.2(d), and (8) that the government failed to prove that over 1,000 plants were involved and that these plants came from the defendant's farm. We have considered these arguments and do not find them persuasive.

We write herein to address an issue which is *res nova* in this circuit: what is the meaning of the word "plant" as used in 21 U.S.C. §841(b)(1)(A)(vii)?

parents.  After leaving a message with either of Bo's parents, or upon contacting Bo directly, Grammer would relay to Bo the quantity of drugs needed.  Bo would drive to Memphis and deliver marijuana to Grammer and other customers.  Bo Fitch was able to supply them with a ready source of the drug from an extensive marijuana growing operation on the Fitch family farm in Mississippi.  The Fitch farm itself was owned by Bo's father, the defendant, Robert G. "Bobby" Fitch, who was aware of his son's drug transactions in Memphis and actively participated in the farm's marijuana growing operation.

In August 1993, Bo Fitch and Bill Grammer were arrested in Memphis while attempting to consummate a drug deal with a third person.  Their arrest quickly led to a fly-over of the Fitch farm via helicopter by the Mississippi Bureau of Narcotics Eradication Unit, which discovered and destroyed seventy-two marijuana plants. On November 10, 1993, local law enforcement officers obtained and executed a search warrant on the entire Fitch farm.  During this search, the authorities found approximately twenty kilograms of processed marijuana in individual zip lock plastic "baggies," or in cans, along with large amounts of marijuana residue throughout the area and considerable evidence of a marijuana growing operation (*e.g.* a large supply of plant food where no other evidence of gardening or traditional farming existed, several boxes of zip lock bags, scales and two pairs of shears).  In addition, 288 marijuana stalks, i.e. the remains of previously harvested marijuana plants, were recovered.  The stalks had been fully stripped of all leaves, leaving only dry husks.  Eventually, this search resulted in the

4

indictment of R.G. Fitch, Bo Fitch and Daryl Fitch (another of R.G. Fitch's sons) on March 21, 1996 on federal drug charges.

Subsequently, on July 25, 1996, a random fly-over search of the north Mississippi area conducted by the Mississippi Bureau of Narcotics revealed marijuana again growing on the Fitch farm. State law enforcement agents obtained a search warrant for the Fitch farm and seized 827 marijuana plants in pre-harvest condition, i.e. alive and growing. Additionally, a federal search warrant executed the next day uncovered numerous items used by the Fitch family to facilitate their marijuana growing activities, e.g. empty sacks of potting soil, multiple cans of plant food, and five gallon buckets camouflaged with black paint.

The July 1996 search led to the issuance of a five count superseding indictment naming R.G. Fitch and Bo Fitch. In count one of the superseding indictment, R.G. Fitch was charged with participating in a conspiracy to distribute and possess with intent to distribute marijuana lasting from on or about January 1993 until July 26, 1996. In addition, counts two and three charged R.G. Fitch with actually manufacturing, distributing and possessing marijuana with intent to distribute during certain months of both 1993 and 1996 respectively. R.G. Fitch pleaded not guilty to these charges and denied any knowledge of the alleged illegal activity. At a jury trial, a considerable amount of evidence tended to show that R.G. Fitch had knowingly assisted in the marijuana growing operation. A verdict of guilty was returned as to R.G. Fitch on all three counts.

## Analysis

The defendant in this case was found guilty of conspiring to violate 21 U.S.C. §841[3] in violation of 21 U.S.C. §846[4] and, therefore, was sentenced according to §841(b) which lists the maximum and minimum penalties applicable to such a violation. Since 1984, Congress has established a policy making punishment for a conviction under 21 U.S.C. §841 dependent upon both the type and quantity or weight of the controlled substance involved in the offense. *See Chapman v. United States,* 500 U.S. 453, 460-61 (1991). In furtherance of this policy, §841(b) establishes a number of mandatory minimum and maximum sentences which a defendant may receive upon conviction according to the factors of quantity and drug type. Similarly, the United States Sentencing Guidelines (U.S.S.G.) establish a defendant's base offense level using the same factors which when coupled with a defendant's criminal history produces his overall guideline range. *See* U.S.S.G. §2D1.1(c)(setting a defendant's base offense level according to the quantity and type of drugs involved). However, if the guidelines

---

[3]21 U.S.C. §841(a):
Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally--
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;....

[4]21 U.S.C. §846:
Any person who attempts or conspires to commit any offense defined in this title shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

indicate a sentencing range below a mandatory minimum set by the substantive criminal statute, the U.S.S.G. provide that the statutorily prescribed minimum sentence constitutes the appropriate guideline sentence.  *See* U.S.S.G. §5G1.1(b).

When an offense involves marijuana plants, the Sentencing Guidelines determine the appropriate base offense level according to the type and quantity of drug concerned by an equivalency ratio of one marijuana plant to 100 grams of marijuana, unless the actual weight of the marijuana involved is greater.  U.S.S.G. §2D1.1(c)n*(E).  The guidelines' equivalency ratio "is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana."  U.S.S.G. §2D1.1, comment (backg'd.).  In the substantive criminal statute, however, Congress set the mandatory minimum and maximum for offenses involving marijuana plants according to the actual number of plants involved, as opposed to the quantity or weight of the usable marijuana the plants could produce.  *See* 21 U.S.C. §§841(b)(1)(A)(vii), (B)(vii), & (D).  Section §841(b)(1)(A)(vii) provides that "[i]n the case of a violation of [the substantive provision of this section] involving...1,000 or more *marihuana plants regardless of weight*...such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life...." (emphasis added)

Prior to sentencing, the PSR indicated that R.G. Fitch's offenses involved 1,187 marijuana plants.  This amount represented the total number of marijuana plants found on the Fitch farm during

7

the three seizures, detailed above, which covered the life of the conspiracy charged in count 1 of the superseding indictment: (1) the 72 marijuana plants discovered and destroyed on or about August 23, 1993, (2) the 288 marijuana stalks found November 10, 1993 and (3) the 827 marijuana plants found growing on the Fitch farm on July 25, 1996. Since over 1,000 marijuana plants were found to be involved in this offense, the mandatory minimum sentence of ten years imprisonment, applicable pursuant to 21 U.S.C. §841(b)(1)(A)(vii), was determined to be the defendant's guideline sentence. In the absence of the statutory minimum, the defendant's Sentencing Guidelines' range would have been calculated to be between 63 to 78 months. *See* U.S.S.G. §5G1.1(b).

Following the recommendation of the PSR, the sentencing judge determined that the defendant's offense involved over 1,000 marijuana plants. Because the weight of the marijuana under the equivalency ratio did not result in a sentencing range above 120 months, the district court sentenced the defendant to the statutory minimum sentence of 10 years pursuant to 21 U.S.C. §841(b)(1)(A)(vii).

The defendant argues that the trial court erred in finding that over 1,000 plants were involved because the 288 dry harvested stalks seized in November 1993 were not "plants" for the purposes of §841(b)(1)(A)(vii). The defendant contends that the word "plants," as used in §841(b), applies only to marijuana plants alive at the time of seizure, i.e. unharvested plants.

This court reviews the sentencing court's application of the

8

U.S.S.G. *de novo*, while reviewing the sentencing court's factual findings for clear error. *United States v. Edwards,* 65 F.3d 430, 432 (5th Cir. 1995). A district court's determination as to the quantity of drugs involved for sentencing purposes is considered a factual finding reviewed for clear error. *See United States v. Mergerson*, 4 F.3d 337, 345 (5th Cir. 1993). Since this appeal involves a question of statutory construction, i.e. whether the 288 stalks were properly considered "plants" as that term is used in 21 U.S.C. §841(b), we review the district court's determination on this point *de novo. Matter of Bruner,* 55 F.3d 195, 197 (5th Cir. 1995).

The defendant relies upon *United States v. Stevens,* 25 F.3d 318 (6th Cir. 1994) and *United States v. Blume*, 967 F.2d 45 (2nd Cir. 1992). In *United States v. Blume*, the Second Circuit held that only live marijuana plants should be counted by the number of plants under the equivalency provision [5], while the amount of dry or harvested marijuana plants should be calculated for sentencing purposes by the actual weight of marijuana they produced. *Blume*,

---

[5]Prior to November 1, 1995, the Sentencing Guidelines' equivalency ratio was a two-tiered system: If an offense involved 50 or more marijuana plants each plant was treated as the equivalent of 1 kilogram of marijuana, while if fewer than 50 plants were involved each plant was treated as the equivalent of 100 grams of marijuana. *See* U.S.S.G. App. C, Am. 516; *see also United States v. Stevens,* 25 F.3d 318, 322 (6th Cir. 1994)(explaining the reasoning behind this two-tiered system). Obviously, a defendant's guideline range under this system was significantly impacted by the sentencing court's determination as to how many marijuana "plants" were involved in his offense. Thus, a number of the cases addressing the issue of what is a "plant" under the guidelines have arisen in this context and, while not directly on point, do provide some guidance as to the issue in this case.

967 F.2d at 49. Similarly, the Sixth Circuit in *United States v. Stevens* found that "[t]he equivalency provision was developed to apply in sentencing when the plants have not been harvested" and thus did not apply when plants were seized post-harvest. *Stevens,* 25 F.3d at 323.

The reasoning of *Blume* and *Stevens,* however, has been rejected by a majority of the circuit courts that have interpreted both the guidelines and the statutory provision at issue. *See United States v. Layman,* 116 F.3d 105, 109 (4th Cir. 1997); *United States v. Shields,* 87 F.3d 1194, 1197 (11th Cir. 1996)(*en banc*); *United States v. Silvers,* 84 F.3d 1317, 1325-27 (10th Cir. 1996); *United States v. Wilson,* 49 F.3d 406, 410 (8th Cir. 1995); *United States v. Wegner,* 46 F.3d 924, 927-28 (9th Cir. 1995); *United States v. Haynes,* 969 F.2d 569, 572 (7th Cir. 1992)(decided prior to *Blume* or *Stevens*). For the following reasons, we now adopt the majority view.

The statute, §841(b)(1)(A)(vii), states that any defendant convicted of an offense under this subsection involving "1,000 or more marijuana plants" shall be subject to a ten year mandatory minimum sentence regardless of the weight of the marijuana produced. Thus, under the plain language of the statute, the only requirement which must be met in order to trigger the applicable mandatory sentence is that the offense involve 1,000 or more marijuana plants. Congress did not distinguish between harvested and unharvested, live or dead plants, and no authority exists within the plain language of the statute for creating such

10

classifications. *See Silvers*, 84 F.3d at 1325(rejecting a defendant's argument that a marijuana plant cannot be considered a plant for sentencing purposes unless the plant is seized alive); *United States v. Fletcher,* 74 F.3d 49, 55 (4th Cir. 1996)("Congress has not further subdivided live marijuana plants into growing plants and cut plants."); *Shields,* 87 F.3d at 1197("Nothing in the text of... §841(b) suggests that [its] application depends upon whether the marijuana plants are harvested before or after authorities apprehend the grower."); *see also Wilson,* 49 F.3d at 410(rejecting the similar argument that only seized live plants can be considered plants for guidelines purposes). However, "[l]est our holding be read too broadly, we emphasize that the term 'offense involving... marijuana plants' encompasses only the cultivation and harvesting of marijuana plants and the processing of plants into consumable product." *Haynes,* 969 F.2d at 572; *see Layman,* 116 F.3d at 109("equivalency ratio... applies to all offenses involving the growing of marijuana....").

In essence, the defendant seeks to add an additional evidentiary requirement to the statute, viz. that marijuana plants must be alive when seized to be counted as plants for sentencing purposes. The statute itself, however, contains no such requirement. *See Wegner,* 46 F.3d at 928(holding that the guidelines and statute merely require evidence that the defendant actually grew and was in possession of live plants during the offense, not specifically at the time the plants were seized). Where the language of a statute is plain and unambiguous, no

further inquiry is necessary and this court must construe the words of the statute consistently with their ordinary meaning. *See Chapman,* 500 U.S. at 461-2; *Johnson v. Sawyer,* 120 F.3d 1307, 1319 (5th Cir. 1997).

The government must prove the number of marijuana plants involved in the offense. For the purposes of applying the mandatory sentences found in §841(b) it is irrelevant whether the plants involved in the offense were alive, cut, harvested or processed when seized, provided that they were alive sometime during the commission of the offense. *See Haynes*, 969 F.2d at 572; *Silvers,* 84 F.3d at 1327("[T]he government is required to prove... that the defendant possessed with the intent to distribute or distributed marijuana plants...at some point in time in order to obtain a sentence under...21 U.S.C. §841(b)(1)(A)(vii)."); *see also Layman,* 116 F.3d at 109(applying the guidelines equivalency ratio to all offenses involving the growing of marijuana regardless of whether plants are actually seized).

In this case, the defendant concedes that the 899 marijuana plants seized by the government while growing were properly considered by the sentencing court to be "plants" as defined in §841(b). As for the 288 stalks in dispute, we conclude that the district court correctly considered these stalks as evidence proving that the offense involved an additional 288 marijuana plants. As shown above, the fact that these 288 marijuana plants had been harvested prior to their discovery did not affect their status as marijuana "plants" involved in this offense for the

purposes of applying the mandatory minimum required by 21 U.S.C. §841(b)(1)(A)(vii).  Therefore, the district court did not commit clear error in finding that this offense involved more than 1,000 marijuana plants for the purposes of sentencing.

## Conclusion

Finding no error in the disposition of this matter by the district court, we AFFIRM in all respects.