*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 07-1706

JESSICA OLSEN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 02-00004-001—R. Allan Edgar, District Judge.

Argued: July 25, 2008

Decided and Filed: August 14, 2008

Before: COLE and CLAY, Circuit Judges; RUSSELL, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul A. Peterson, FEDERAL PUBLIC DEFENDER'S OFFICE, Marquette, Michigan, for Appellant. Nils R. Kessler, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

OPINION

---

CLAY, Circuit Judge. Defendant, Jessica Olsen, appeals from an order entered by the United States District Court for the Western District of Michigan sentencing her to 41 months of imprisonment and two years of supervised release for possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Specifically, Olsen contends that the district court erred in calculating the drug quantity attributable to her for purposes of establishing her base offense level. For the reasons that follow, we **REVERSE** the judgment of the district court.

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

## BACKGROUND

On January 15, 2002, after receiving a tip from an informant regarding illegal manufacturing, possession and sale of marijuana by Joseph Olsen, members of the Upper Peninsula Substance Enforcement Team obtained and executed a search warrant for Joseph Olsen's home. Joseph Olsen resided in the home with his wife, Defendant Jessica Olsen ("Olsen"). While searching the home, police discovered a "5' x 5' x 5' growing chamber set up for the hydroponic cultivation of marijuana in [the] basement." (J.A. at 10) The basement contained approximately 168 live plants and 137 recently harvested plants. Additionally, police found 557.8 grams of processed marijuana, apparently the proceeds of the harvested plants.[1]

Olsen arrived as police were executing the search warrant and agreed to an interview with police. During the interview, Olsen indicated that she knew the substance being grown in her home was marijuana and that she intended to distribute it. Olsen also stated that she helped to build the hydroponic growing chamber. According to an affidavit filed by a law enforcement officer that searched Olsen's home, an informant reported that "Ms. Olsen had admitted to purchasing the building materials with her own money." (*Id.*)

On February 13, 2002, a grand jury sitting in the Western District of Michigan issued a two count indictment against Olsen, charging her with manufacturing more than 100 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) as well as possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).

Approximately two months after the grand jury issued the indictment, Olsen entered into a plea agreement with the government. Under the terms of the agreement, Olsen was to plead guilty to count two of the indictment. The government, apparently based on its belief that Olsen was less culpable than her husband, agreed to dismiss the first count of the indictment which alleged that Olsen manufactured more than 100 marijuana plants. According to the factual basis of the agreement, Olsen acknowledged jointly possessing 557.8 grams of marijuana with her husband with the intent to distribute the marijuana. The agreement did not, however, specify the appropriate Guidelines range and the "parties reserve[d] the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures." (J.A. at 16-17) On May 1, 2002, Olsen appeared before a magistrate judge and pleaded guilty to possession with intent to distribute marijuana. The magistrate judge's acceptance of Olsen's plea was subsequently adopted by the district court.

In July of 2002, Olsen was scheduled to appear before the district court for sentencing. Olsen, however, absconded prior to the hearing. Thereafter, the government requested that Olsen's bond be revoked pending sentencing. A magistrate judge granted the motion and issued a warrant for Olsen's arrest. On March 27, 2007, Olsen was apprehended in San Diego, California and incarcerated pending sentencing.

Prior to sentencing, a presentence investigation report ("PSR") was prepared. The PSR recommended against the application of a reduction for acceptance of responsibility, citing Olsen's "absconding from pre-trial supervision" and her statements in which she "falsely deni[ed] providing growing and distribution assistance over the course of the instant offense . . . ." (J.A. at 79) Olsen's base offense level was calculated at 18 because the offense involved "at least 20 but less than 40 kilograms of marijuana. According to the Offense Conduct section, [Olsen's] criminal activity involved 30.5 kilograms of marijuana." (J.A. at 80) The PSR calculated the drug quantity amount based on the equivalency ratio provision contained in USSG § 2D1.1. Under that provision, the 168

---

[1]Joseph Olsen was arrested by police during the search of the Olsen residence. Mr. Olsen, however, is not a party to the instant appeal.

live plants and the 137 harvested plants found at the Olsen residence were multiplied by "100 grams each for a total of 30.5 kilograms of marijuana." (J.A. at 79) After a two-level enhancement for obstruction of justice, Olsen's total offense level was calculated at 20. The PSR determined Olsen to be in criminal history category II. Olsen's total offense level and criminal history category placed her in the Guidelines range of 37-46 months of imprisonment.

On May 24, 2007, Olsen appeared before the district court for sentencing. During the hearing, Olsen raised an objection to the PSR's method of calculating the drug quantity amount attributable to her for purposes of sentencing. Although conceding that the 168 live marijuana plants found during the search of her home were subject to § 2D1.1's 1-to-100 equivalency ratio, Olsen argued that the harvested plants should not fall under the equivalency provision. Rather, she contended, the harvested plants should be calculated based on the weight of the marijuana actually produced by the plants, which was estimated to be 557.8 grams by law enforcement officers. Accordingly, Olsen asserted "[t]hat [the] total, which would be just over 17 kilograms, would be in the lower guidelines category of 15, as opposed to 18." (*Id.*) The district court, however, rejected Olsen's objection, noting that it found "that the pre-sentence report is correct, that the guidelines as calculated, the drug quantity, at least as calculated there, is correct." (J.A. at 54) Thus, the district court treated the harvested plants as if they were live plants for purposes of sentencing and applied the equivalency ratio.

After hearing arguments from Olsen and the government regarding the appropriate sentence, the district court sentenced Olsen to 41 months of imprisonment and two years of supervised release. Olsen now timely appeals.

## DISCUSSION

### A.     Standard of Review

This Court generally reviews a district court's drug quantity calculation for clear error. *United States v. Swanberg*, 370 F.3d 622, 624-25 (6th Cir. 2004). However, "[q]uestions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*." *United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001); *see also United States v. Edge*, 989 F.2d 871, 876 (6th Cir. 1993) ("Defining the word 'plant' for purposes of the Sentencing Guidelines is a question of statutory construction subject to *de novo* review.") (citation and quotation marks omitted).

### B.     Analysis

Olsen contends that the district court improperly calculated the amount of marijuana in determining her base offense level under USSG § 2D1.1(c). Olsen asserts that the district court's use of the 1-to-100 equivalency ratio was inappropriate with respect to the 137 harvested plants seized during the execution of a search warrant at her home. Instead, Olsen argues that the district court should have utilized the actual weight of the 557.8 grams of marijuana harvested from the 137 plants to calculate her base offense level. We agree.

As a general matter, the drug quantity table of the Sentencing Guidelines determines the offense level for marijuana crimes based on the weight of the marijuana attributable to a defendant. However, "[w]hen a person is apprehended with marijuana *plants* . . . the appropriate weight of the marijuana cannot be determined simply by weighing the plants, for Congress has criminalized possession of only consumable portions of the plant . . . ." *United States v. Stevens*, 25 F.3d 318, 320-21 (6th Cir. 1994). Rather, under § 2D1.1(c) of the Guidelines, the base offense level of a defendant convicted of a drug offense involving marijuana plants is established pursuant to what is known as the "equivalency ratio" provision. Specifically, the equivalency ratio states that:

> In the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marihuana. *Provided*, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

USSG § 2D1.1(c), Application note E. According to the commentary accompanying § 2D1.1(c), "[t]he decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana." *Id.*

In determining when the equivalency ratio is applicable, this Court has drawn a distinction between different types of marijuana crimes that involve the growth and harvesting of marijuana plants. Specifically, in *Stevens,* 25 F.3d 318 (6th Cir. 1994), and *Oliver v. United States*, 90 F.3d 177 (6th Cir. 1996), this Court held that the equivalency ratio is inapplicable to harvested plants in the context of marijuana possession crimes and applicable to such plants in the context of sentencing for marijuana manufacturing convictions. Because the parties do not dispute the propriety of the district court's use of the equivalency ratio with respect to the live marijuana plants seized at Olsen's home, the critical question becomes whether the harvested plants can be similarly subject to the ratio under the factual circumstances surrounding Olsen's offense. Thus, an extended discussion of *Stevens* and *Oliver* is warranted.

In *Stevens*, this Court considered a challenge to the application of the equivalency ratio where a defendant was convicted of conspiracy to possess marijuana with intent to distribute. 25 F.3d at 320. There, the defendant was indicted for the conspiracy offense after law enforcement officers made a number of controlled purchases of marijuana and seized additional amounts of marijuana while executing a search warrant at the defendant's home. *Id.* Before the grand jury, the government called the defendant's supplier who testified regarding his history of providing marijuana to the defendant. *Id.* In particular, the supplier testified that approximately 1600 marijuana plants were grown and/or harvested over the course of the conspiracy. *Id.*

At sentencing, the district court "determined [the defendant's] base offense level using the drug quantity table in § 2D1.1 of the Guidelines." *Id.* The district court disregarded the actual amount of consumable marijuana police purchased from the defendant and seized during the search of the defendant's home. Instead, the district court found the defendant to be responsible for 1600 plants, both live and harvested, grown by his supplier as "relevant conduct" that was attributable to the defendant as a coconspirator. *Id.*

On appeal, this Court reversed the district court's application of the equivalency ratio to harvested plants. After reviewing the legislative history and a number of cases interpreting the equivalency provision, the *Stevens* court noted that "[t]he equivalency provision was developed to apply in sentencing when the plants have not been harvested." *Id.* at 323. Thus, this Court held that "[t]he proper way to calculate the quantity of marijuana for sentencing here, then, is to apply the provision only to live marijuana plants found. Additional amounts for dry leaf marijuana that a defendant possesses–or marijuana sales that constitute 'relevant conduct' that has occurred in the past–are to be added based upon the actual weight of the marijuana and not based upon the number of plants from which the marijuana was derived." *Id.* at 323. *See also United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992) (holding that § 2D1.1's ratio applies only to live plants, rather than dry leaf marijuana).

In *Oliver v. United States*, however, a panel of this Court narrowly interpreted the holding of *Stevens*. There, a defendant pleaded guilty to manufacturing marijuana. At sentencing, the district court computed the defendant's base offense level utilizing the equivalency ratio at issue in *Stevens*. As in *Stevens*, the district court applied the equivalency ratio to plants that had been harvested before being seized by law enforcement. 90 F.3d at 178. On review, this Court held that the defendant could not avail himself of the *Stevens* decision because *Stevens* was deemed to be

"distinguishable on the basis of the underlying crime" based on the fact that the defendant was convicted of manufacturing marijuana whereas *Stevens* involved a conviction for possession with intent to distribute. *Id.* at 179. The panel noted that "[t]his Circuit recognizes that one reason behind the equivalency ratio in marijuana sentencing is to punish marijuana growers more harshly than mere marijuana possessors." *Id.* (citing *United States v. Holmes*, 961 F.2d 599, 601 (6th Cir. 1992)). "If the equivalency ratio were deemed inapplicable in cases such as this, where a convicted grower of marijuana has just harvested his crop, this goal would be frustrated. So long as the government can prove, by a preponderance of the evidence, that a particular grower charged with manufacture grew a particular plant, sentencing should be based on the equivalency ratio in the sentencing guidelines." *Id.* Thus, this Could held that "the equivalency ratio should remain applicable to harvested plants in manufacture cases in order to treat all defendants convicted of manufacturing the same."[2] *Id.*

We find that, when read together, *Stevens* and *Oliver* require that the harvested, dry leaf marijuana attributable to Olsen be calculated based on weight. Thus, the district court's application of the equivalency ratio to the harvested plants for the purpose of establishing Olsen's base offense level was in error. In the instant case, police found approximately 168 live marijuana plants and 137 harvested plants from which 557.8 grams of consumable marijuana was derived. Inasmuch as police found the harvested amount of consumable marijuana, as in *Stevens*, there is no need to speculate regarding the amount of marijuana that could have been produced by the plant such that the 1-to-100 ratio is unnecessary. Moreover, unlike *Oliver*, Olsen was not convicted of marijuana manufacturing, but rather possession of marijuana with intent to distribute. Indeed, the government noted at Olsen's sentencing hearing that she was offered the opportunity to plead guilty to the possession offense because she was less culpable than her husband. Therefore, the overall purpose of the equivalency ratio, to punish those *convicted* of marijuana manufacturing, will not be undermined.

The government, however, contends that the harvested plants are attributable to Olsen, and thus should be treated as live plants under the equivalency ratio provision for purposes of sentencing, pursuant to the relevant conduct provision of the Guidelines. In particular, the government contends that because Olsen admitted to assisting with the purchase of materials used to build the marijuana lab, that the factual predicate involved in this case is more akin to *Oliver* than to *Stevens*. Thus, the government contends that Olsen's relevant conduct subjects the harvested plants to the equivalency provision. This argument is without merit.

As an initial matter, a defendant who is convicted of a possession or distribution offense is not subject to the equivalency provision merely because their relevant conduct involves a degree of manufacturing activity. Indeed, in *Stevens*, the defendant was similarly subject to the relevant conduct provision of the Guidelines because he was a coconspirator of a marijuana manufacturer in a distribution offense. There, the defendant consulted with the grower regarding the number of plants needed to supply the marijuana distribution conspiracy. Thus, as a coconspirator, the defendant was liable for the foreseeable criminal acts, i.e., marijuana manufacturing, of coconspirators. *Stevens*, 25 F.3d at 322-23. Nevertheless, the *Stevens* court held that, to the extent that the defendant could be held responsible for his coconspirator's manufacturing activities under

---

[2]As the government notes, most of the circuits that have considered this issue have reached a conclusion that is in accord with *Oliver*. Indeed, with the exception of the Second and Sixth Circuits, the courts of appeals have interpreted the equivalency provision to apply to both live and harvested plants when the defendant was involved in the cultivation of the marijuana plants. *See United States v. Layman*, 116 F.3d 105, 109-10 (4th Cir. 1997); *United States v. Fitch*, 137 F.3d 277, 280-82 (5th Cir. 1998); *United States v. Montgomery*, 990 F.2d 266, 269 (7th Cir. 1993); *United States v. Wilson*, 49 F.3d 406, 410 (8th Cir. 1995); *United States v. Wegner*, 46 F.3d 924, 928 (9th Cir. 1995); *United States v. Silvers*, 84 F.3d 1317, 1327 (10th Cir. 1996); *United States v. Shields*, 87 F.3d 1194, 1197 (11th Cir. 1996). However, it does not appear that the other circuits have explicitly limited the application of the equivalency provision to marijuana manufacturing convictions as this Court did in *Oliver*.

the relevant conduct provision, any marijuana harvested must be measured by weight rather than the equivalency provision. *Id.* In short, under *Stevens*, a district court is not barred from considering manufacturing activity as relevant conduct in sentencing a defendant convicted of possession or distribution, it is simply limited in terms of *how* such conduct is measured for purposes of sentencing. Indeed, *Oliver* confirms this limitation based on its explicit application of the equivalency provision in the context of convictions for marijuana manufacturing. Thus, contrary to the government's assertion, the district court erred in applying the equivalency provision to harvested plants to Olsen in a case that did not involve a conviction for marijuana manufacturing.

## CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's judgment, **VACATE** Olsen's sentence and **REMAND** for further proceedings consistent with this opinion.