NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0580n.06

No. 12-3213

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 14, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DENISE HUFFMAN, | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before:  McKEAGUE and DONALD, Circuit Judges; LAWSON, District Judge.[*]

**Bernice B. Donald, Circuit Judge.**  Denise Huffman challenges her sentence on the grounds that the district court incorrectly calculated the quantity of drugs for which she is criminally liable and that her sentence is procedurally and substantively unreasonable because the court did not expressly consider her age of 58 years.  We conclude that the district court did not err and, accordingly, we affirm.

## I.  BACKGROUND

Denise Huffman pleaded guilty to maintaining premises for the purpose of unlawfully distributing controlled substances, in violation of 21 U.S.C. § 856(a)(1) and (b) and 18 U.S.C. § 2 for her involvement in a "pain management" clinic.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

In 2001, Huffman opened the Tri-State Health Care & Pain Management ("Tri-State") clinic in Portsmouth, Ohio, which she operated until May 2007. Huffman charged patients $125 to $200, in cash only, before they could see one of the physicians, and she ensured that the physicians prescribed narcotic pain medications through threats and other means. The clinic came to be known throughout the region for prescribing large amounts of pain medication to drug addicts. Consequently, local pharmacies began refusing to honor prescriptions from the clinic.

In 2003, Huffman opened a drug dispensary inside the Tri-State clinic to distribute pain medications directly to patients. Over the next two years, Huffman ordered roughly 1.5 million pills, or "dosage units," of pain medication that contained Schedule II controlled substances to distribute through the dispensary. Of these, around 1 million units were distributed from the dispensary, but Huffman did not keep proper records to indicate where they went. Some controlled substances were given to employees as payment for their services. Certain patients were "shorted" the pills when the dispensary held back pills the patients had paid for.

In April 2003, Huffman hired Dr. Paul Volkman, a chronic pain doctor, to prescribe pain medications containing controlled substances, regardless of medical need, as previous physicians had done. From the time he was hired until September 2005, Volkman prescribed a regular cocktail of Schedule II controlled substances that patients obtained from the Tri-State clinic, plus an additional one million doses that were not obtained from Tri-State. He prescribed narcotics—including oxycodone, diazepam, and hydromorphone—outside the scope of medical need, without examination or diagnosis, and he did not treat the patients. He sometimes ordered blood and urine tests for

patients, but he did not review the results. Many of the patients were known to be drug addicts or drug distributors. He prescribed ever-increasing amounts of these medications, sometimes reaching toxic levels, causing those not already addicted to become addicted. Some patients even died of drug overdose.

Huffman admitted that she had knowledge of and assisted Volkman in these practices. However, she also indicated that some of the prescriptions were legitimate, and she did not specify how much of the total amount distributed was legitimate versus how much was criminally distributed. She merely said "That's what I don't know."

The probation office prepared a Presentence Report ("PSR"), finding that out of the 1 million pills dispensed or lost from the Tri-State dispensary and the additional 1 million pills that Volkman prescribed beyond those dispensed at the clinic, Huffman was responsible for 1.5 million pills. In response to Huffman's objection that some of the pills were given to patients with legitimate medical issues for legitimate medical reasons, the probation office responded that 1.5 million pills was a fair estimate of Huffman's criminal liability, based on a total dispensed amount of 2 million pills. Accordingly, the PSR recommended that Huffman's base offense level should be 32, based on a range of at least 1 million but less than 3 million units of Schedule II controlled substances under section 2D1.1(c)(4) of the Sentencing Guidelines. The PSR recommended enhancements for Huffman's possession of a firearm in connection with the offense and for her role as an organizer or leader in the criminal activity, resulting in an adjusted offense level of 36.

At her sentencing hearing, Huffman again objected to the PSR's drug quantity finding, arguing that some of the pain medications prescribed by Volkman had been lawfully prescribed for legitimate medical reasons. She did not offer any evidence of this fact other than the fact that Volkman was a licensed doctor and pharmacist and that she believed some of the prescriptions were medically necessary. The government responded that there had been a "conspiracy to operate a drug house," that the entirety of the Tri-State clinic was illegitimate because the whole point was to give controlled substances to anyone who would pay, and that Huffman was criminally liable for all pills distributed or prescribed at Tri-State.

The court responded that "I don't think it takes a medical expert to know that a small clinic in a small town like Portsmouth that dispensed in excess of one million dosage units is not fulfilling a legitimate medical need." While Huffman claimed that some pills were legitimately distributed, the court noted that she had not identified any legitimate patients. The court concluded that the 1 million doses that were unaccounted for from the dispensary plus the additional testimony established that a total criminal liability of at least 1 million doses was likely a conservative estimate.

The court went on to consider the government's § 5K1.1 motion to reduce Huffman's offense level from 36 to 33, thus reducing her guidelines sentencing range from 188 to 235 months to 135 to 168 months, based on Huffman's substantial assistance during the prosecution of Volkman. Huffman sought a further reduction to a range of 60 to 72 months, based on the fact that she was 58 years old and in poor health. The court responded that the § 5K1.1 motion is intended to reward a defendant for substantial assistance, that it would grant the motion, and then it asked for more

information on the subject of a "fair and appropriate sentence." The court heard from the mother of a Tri-State patient who died of a drug overdose, from counsel for the government who spoke about the impact of the crime, and from defense counsel who noted that the Tri-State patient who died was suicidal. The court asked defense counsel if he wished to supplement what had already been said as to a fair and appropriate sentence, and counsel responded "I think I'm done. I think I've said what I said before." The court gave Huffman an opportunity to speak. She said that she had admitted responsibility and that she was sorry.

After hearing from all involved, the court gave a lengthy explanation of its ruling. The court said that it was accepting the offense level recommendations in the PSR, that it was granting the government's § 5K1.1 motion for a 3-level reduction, making the recommended range 135 to 168 months, and then moved on to discuss the sentencing factors under 18 U.S.C. § 3553(a). The court discussed the harm caused, the need to punish and reflect the seriousness of the offense, and Huffman's addiction and health problems, concluding that it would accept the government's recommendation for a sentence at the bottom of the Guidelines range, which would provide a lengthy period of incarceration. The court did not expressly mention Huffman's age. The court asked for further objections and Huffman had none. It then sentenced Huffman to 152 months of imprisonment, followed by three years of supervised release, and $100 in a special assessment.

Huffman now appeals her sentence.

## II. ANALYSIS

Huffman preemptively argues that she did not waive her right to appeal sentencing issues. However, plea waiver is a non-jurisdictional affirmative defense, and it is the government's burden to raise it. *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012)*; Hunter v. United States*, 160 F.3d 1109, 1113-14 (6th Cir. 1998) (precluding the government from raising appeal waiver when it sat on the defense). The government has expressly declined to raise the waiver provision in Huffman's plea agreement. We need not reach the issue sua sponte, *Jones*, 689 F.3d at 624 n.1, and we decline to do so.

Huffman raises two challenges to her sentence, and we address them one at a time.

## A. Drug quantity determination

Huffman argues first that the district court made both legal and factual errors in its determination of drug quantity. We review a district court's factual finding of drug quantity for clear error. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (internal quotations omitted). If the district court's determination is consistent with the evidence, there has been no clear error, even if there are other permissible views. *Id.* However, we review legal questions underlying

the factual determination de novo. *See e.g.*, *United States v. Olsen*, 537 F.3d 660, 663 (6th Cir. 2008).

Under section 2D1.1(c) of the Sentencing Guidelines, the district court must determine the quantity of drugs for which a defendant is responsible in order to determine her base offense level. A district court is allowed to estimate the quantity so long as the court can conclude that it is more likely than not that the defendant is actually responsible for an amount greater than or equal to the amount for which she is held legally responsible. *Jeross*, 521 F.3d at 570. When the drug quantities are contested, the government has the burden to prove, by a preponderance of the evidence, that a particular drug quantity applies. *United States v. Vasquez*, 560 F.3d 461, 471-72 (6th Cir. 2009).

The district court held Huffman responsible for an amount of "[a]t least 1,000,000 but less than 3,000,000 units" of Schedule II controlled substances. *See* U.S.S.G. § 2D1.1(c)(4). Huffman argues that the court's estimate of "at least one million" units was not proven by a preponderance of the evidence. We disagree.

In making a reliable drug quantity finding, the district court is allowed to consider statements Huffman made during her plea proceedings as well as evidence admitted at co-defendant Volkman's trial. U.S.S.G. § 6A1.3(a) (specifying that the court may use any reliable information, regardless of admissibility, to resolve a disputed sentencing factor); *see also United States v. Bey*, 384 F. App'x 486, 489-90 (6th Cir. 2010) (holding that a court may consider testimony from related proceedings)*; United States v. Bikra*, 487 F.3d 450, 457-58 (6th Cir. 2007) (holding that confessions of others are

admissible during defendant's sentencing hearing). Huffman admitted at her plea hearing that the Tri-State dispensary distributed over 1 million units of pain medication and that Volkman prescribed an additional 1 million units not distributed at Tri-State. She also admitted that she cannot account for the whereabouts of the pills Tri-State distributed directly, as she was required to do. Huffman correctly argues that haphazard recordkeeping alone does not equate to illegal distribution, but her other admissions support the inference that both the pills distributed from Tri-State and those additional pills prescribed are attributable to Huffman's crime of maintaining premises for the purpose of unlawfully distributing controlled substances.

Huffman was the owner and manager of the Tri-State clinic. She admitted that she hired Volkman to prescribe controlled substances without medical need and that she knowingly assisted him in doing so, even for known drug addicts and drug distributors. Worse, she admitted that she knew that Volkman deliberately increased the dosages of controlled substances so that those not already addicted would become addicted. Thus, what may have begun as a legitimate medical need quickly became illegitimate. She also admitted that Volkman prescribed the usual cocktail of substances without an appropriate exam, without reviewing patients' lab tests, and without a real doctor-patient relationship with the patients. The Tri-State clinic was known locally as a "pill mill" with a reputation so poor that local pharmacies would not fill prescriptions from Volkman for controlled substances. This is the entire reason she opened the Tri-State dispensary. The court would have been justified in concluding that all 2 million pills were attributable to Huffman. It was certainly justified in its conclusion that she is responsible for "at least one million" units.

When making its factual finding, the district court acknowledged Huffman's objection that some of the controlled substances were prescribed for legitimate medical purposes, but noted that she had not identified anyone to whom legitimate prescriptions were made or otherwise supported her claim. Based on this statement, Huffman makes several misguided arguments concerning the burden the court placed on Huffman. Her first is an argument that the court did not require the government to meet its burden of proof, but rather shifted the burden to Huffman to prove that she was responsible for less. This argument we have already dispelled, as the government adequately met its burden. Moreover, it was not inappropriate for the court to consider the lack of evidence that some of the prescriptions were legitimate. *See United States v. Leal*, 75 F.3d 219, 228-29 (6th Cir. 1996), *abrogated on other grounds by United States v. Kennedy*, 107 F. App'x 518, 519-20 (6th Cir. 2004). Once the government has met its burden of proof to show that a defendant is responsible for a particular quantity of drugs, we have no problem with placing the burden on the defendant to show that the correct quantity is less, as we have done in the context of amount of loss calculations. *See United States v. Washington*, __ F.3d ___, 2013 WL 1955680, at *8 (6th Cir. May 14, 2013) (published decision) (holding that the defendant had the burden to show by what amount the government's amount of loss calculation should be reduced for sentencing purposes).

Her other arguments are based on the defendant's burden of production to trigger the district court's duty to make factual findings independent of the PSR findings. Under Federal Rule of Criminal Procedure 32(i)(3), the district court may accept as true any undisputed portion of the PSR, but must make factual findings for any disputed portion. We follow the "bare denial" rule that a

defendant must do more than simply deny the PSR's truth in order to trigger the district court's duty. *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (citing *United States v. Mustread*, 42 F.3d 1097, 1102 (7th Cir. 1994)); *see also United States v. Poulsen*, 655 F.3d 492, 513 (6th Cir. 2011). Rather, the defendant has the burden to produce some evidence calling the correctness of the facts into question. *Id*. Once the defendant meets this burden, the government again has the burden to prove that the PSR version of facts is actually true. *Id*. Huffman argues that we should overrule *Lang* and instead adopt the Eighth Circuit rule, which provides that the government bears the burden to prove the facts set forth in the PSR even if the defendant makes a bare denial. *United States v. Poor Bear*, 359 F.3d 1038, 1041 (8th Cir. 2004).

We cannot overrule a prior published decision of this court unless we sit in en banc review or unless a decision of the Supreme Court requires us to modify the previous decision. *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000). We are not sitting en banc and we can find no Supreme Court case that would suggest that *Lang* is incorrect. Huffman points to the case of *Mitchell v. United States*, 526 U.S. 314, 330 (1999), where the Supreme Court held that a sentencing court may not draw adverse inferences from a defendant's failure to testify, noting that "[t]he Government retains the burden of proving facts relevant to the crime at the sentencing phase." But *Mitchell* is not in conflict with *Lang*. In *Lang*, we held that it takes more than a bare denial to put a fact into dispute. 333 F.3d at 681. We retain the rule that the government bears the burden to prove disputed facts relevant to sentencing. *See Vasquez*, 560 F.3d at 471-72.

The parties disagree as to whether Huffman's statements that some of the prescriptions were for legitimate purposes were sufficient to place the issue of drug quantity in dispute. *See United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003). The government argues that the statements were simply bare denials of the PSR's correctness. Huffman points to *United States v. Vanhoose*, 446 F. App'x 767, 769 (6th Cir. 2011), where we found that a defendant's statement that the amount of loss calculation was incorrect and request for an evidentiary hearing were sufficient to trigger the court's fact-finding duty. In the present case, Huffman's statements that she disputed drug-quantity amount because some of the prescriptions were legitimate show that "the district court was put on notice that [she] contested the calculations used in the PSR, and that Rule 32's requirements were triggered." *See id*.

Nevertheless, we conclude that the district court fulfilled its fact-finding duties. The PSR recommendation was that Huffman was responsible for at least 1.5 million units of Schedule II controlled substances. Contrary to Huffman's arguments, the court did not simply adopt this amount. Rather, it concluded that she is responsible for at least 1 million units, and it articulated its basis for this finding. The court stated that over 1 million pills from the Tri-State dispensary were unaccounted for and heard testimony regarding the additional 1 million pills prescribed. The court listened to arguments that Volkman was a licensed doctor and that some of the prescriptions were legitimately prescribed. The court responded that Huffman had not identified any legitimate patients and that "I don't think it takes a medical expert to know that a small clinic in a small town like Portsmouth that dispensed in excess of one million dosage units is not fulfilling a legitimate medical

need." In other words, the court found these assertions to lack credibility. Credibility is a question

for the fact finder, here the district court. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The

court concluded that the estimate of 1 million units was probably conservative, and therefore erred

on the side of caution, as it was required to do. *See United States v. Walton*, 908 F.2d 1289, 1302

(6th Cir. 1990). The district court's calculation of drug quantity was not clearly erroneous.

**B. Reasonableness of sentence**

Huffman also challenges the procedural and substantive reasonableness of her sentence

because the district court did not expressly consider her age when analyzing the § 3553(a) factors.

Normally, we review the reasonableness of sentences under the "deferential abuse of discretion"

standard. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010) (internal quotations omitted).

For procedural reasonableness questions, however, we switch to plain error review where the

defendant did not preserve the issue by objecting in front of the sentencing judge. *Id.*; *United States*

*v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc) (holding that because the district court

is required to specifically ask for objections under *United States v. Bostic*, 371 F.3d 865 (6th Cir.

2004), plain error review applies where the defendant does not object below to a sentencing matter).

The government contends that we should review this claim for plain error because the

defendant only mentioned Huffman's age in response to the government's § 5K1.1 motion and did

not repeat the objection when the court moved on to the general § 3553(a) factors or when the court

asked the *Bostic* question. It is not entirely clear from the record whether Huffman properly

preserved the procedural reasonableness issue. If she did not, it is still not entirely clear which portions of her claim is substantive and which is procedural. She claims that the court did not consider her age, which is a substantive reasonableness question, but her evidence seems to be that the court did not explain how it considered age, and this is mainly a procedural reasonableness question. As we have noted before, the border between the two kinds of reasonableness "is blurry if not porous." *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007). In the past, we have declined to apply plain error review when the two challenges overlap. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 579-80 (6th Cir. 2009) (holding that plain error review does not apply where the overlapping nature of a procedural and substantive reasonableness challenge of whether the court properly considered § 3553(a) factors renders it difficult to know which part of the question should be reviewed under the heightened standard). We decline to determine whether Huffman sufficiently preserved the issue or whether her claims sufficiently overlap to warrant the heightened standard of review on the entire reasonableness claim. Assuming, *in arguendo*, however, that the abuse of discretion standard applies, her claim still fails.

A sentence is procedurally unreasonable if the district court failed to properly calculate the Guidelines range, "treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent

factor." *United States v. Shaw*, 707 F.3d 666, 674 (6th Cir. 2013) (internal quotations omitted). If the sentence falls within the recommended Guidelines range, we apply a rebuttable presumption of substantive reasonableness. *Id.*

While the court did not expressly discuss or consider Huffman's age as part of its analysis of the § 3553(a) factors, we conclude that it was not required to do so for two reasons. First, her age of 58 years is not "unusual" when viewed alone or when viewed in combination with her health. *See* U.S.S.G. § 5H1.1 (specifying that age "may" be relevant in determining whether a departure is warranted where age, in combination with other factors, present "unusual" circumstances such as an elderly or infirm defendant); *see also United States v. Christman*, 607 F.3d 1110, 1119 (6th Cir. 2010) (excusing the district court from considering a defendant's charitable and public service record where it was not "exceptional" under § 5H1.2). Huffman is not elderly and, as the district court noted, her poor health is likely attributable to her addictions, not to her age. Huffman argues that a defendant's age is a non-frivolous argument that the court must consider when raised because an older defendant is less likely to re-offend. This leads to our second point. A requirement that the court consider an argument does not require the court to expressly recite the exact same words used by the defendant. *See United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006) ("While the district court did not explicitly name each of the 3553(a) factors that it was using to arrive at Collington's sentence, a reasonable sentence based on consideration of the factors does not require a rote listing."). The record here shows a consideration of Huffman's personal characteristics.

Huffman's sentence was not procedurally unreasonable. Nor has she overcome the presumption that her within-Guidelines sentence is substantively reasonable.

## III.  CONCLUSION

For the foregoing reasons, we affirm Huffman's sentence, as imposed by the district court.